# WHEELING.

## GAUS v. KAMMER.

### July 17, 1876.

1876.
June Term.
A new trial should be granted where the verdict is plainly contrary to the evidence.

*Supersedeas* to a judgment of the circuit court of Ohio county, rendered on the twenty-eighth day of May, 1874, in a suit then pending in said court, between Conrad A. Gaus, plaintiff, and Benno Kammer, Robert G. Barr and Peter Erb, defendants. The *supersedeas* was granted on the petition of Barr.

The other facts and a sufficient statement of the testimony set forth in the bill of exceptions taken to the opinion of the court below, are contained in the opinion of the Court.

The Hon. Thayer Melvin, judge of said circuit court, presided at the trial below.

*Henry M. Russell* for the plaintiff in error.

*George O. Davenport* for the defendant in error.

GREEN, JUDGE:

This was an action of assumpsit, brought in 1874, in the circuit court of Ohio county, by Conrad A. Gaus *v.* Benno Kammer, Robert G. Barr and Peter Erb, founded on the following note:

"WHEELING, W. VA., Feb. 3, 1873.

$500.00.

One year after date, I promise to pay to the order of R. G. Barr and Peter Erb, five hundred dollars, value received, negotiable and payable at the German Bank of Wheeling, with 8 per cent. interest from date.

Endorsed.  B. KAMMER."

PETER ERB,

R. G. BARR."

The name of R. G. Barr, in the body of the note, appears to have been written over the name of F. Weymer, through which a pen had been run to erase it.

Issue having been joined, on the plea of non-assumpsit, the jury found a verdict for the plaintiff against Benno Kammer and R. G. Barr, and assessed his damages at $552.77, and found for the defendant, Peter Erb. Barr moved for a new trial, as to himself. The court granted him a new trial, and entered up judgment against Benno Kammer. The plaintiff excepted to this action of the court and took his bill of exceptions, in which the court certified the evidence, as follows:—Kammer, on behalf of the plaintiff, testified that the note, which was accommodation paper, was drawn at first payable to F. Weymer and Peter Erb. It was endorsed by Erb, who, ascertaining the same day that Weymer would not endorse it, at once notified Kammer that he would not be an endorser, and Kammer promised him to get an endorser in his place. He, Kammer, stated that to the best of his recollection he erased the name of Weymer, before Barr endorsed the note, but of this he is not positive; and he also stated that he did not distinctly remember what was said about Weymer's signing the note, in the conversation with Barr, at the time he endorsed it; as much as he could remember was, he told him he could see Weymer again and get him to endorse also. He further states that he put Barr's name in the place of Weymer's, but does not say when he did this. Directly after Barr endorsed the note, he, Kammer, delivered it

9

to the plaintiff, for a valuable consideration.    He further states, that a few days afterwards Erb asked him if his name was on the back of the note still, and that he told him it was and Erb said it was all right.    This Erb positively denied.    Other evidence shows, satisfactorily, that Erb never did assent to, or ratify, the note, after its unauthorized alteration.    The jury, in effect, so found, and no new trial, so far as the verdict in favor of Erb is concerned, being asked, we must regard it as a fact established that Erb never did ratify the note.    Kammer also states that he gave a deed of trust on January 10, 187 ¦, to indemnify Barr, by reason of his having endorsed said note ; this was admitted by Barr, and the deed of trust produced.    It turned out of no value, as a security.    Barr testified, on behalf of the defendants, positively, that when the note was presented to him, by Kammer, and he asked to become an accommodation endorser, the note, on its face, was payable to Weymer and Erb, and Erb's name was endorsed on the back of the note ; that Kammer told him that he would get Weymer to endorse his name on it above Erb's ; Kammer told him that Weymer and Erb were amply good for the amount of the note.    Not knowing Weymer he made considerable inquiry of others, (as we understand the testimony), as to the financial standing of both Weymer and Erb.    He never knew of the alteration appearing now on the face of the note till the fall of 1873, when he took the deed of trust to secure himself.    He also took, for his security, an order on third parties, from Kammer—out of which he was to pay first a fee of $50 due him, and the balance, if any, to indemnify him for the endorsement of this note ; he never realized anything from this order.    He never informed the plaintiff what grounds he had for resisting his liability, though he did inform him that he would resist the payment of this note, not holding himself bound.    This he did not do for some time after he was informed of the alteration.

The question in this case is, was the alteration of

the note, which was, clearly, material, made by Kammer before or after the note was endorsed by Barr, and, if after, did he subsequently ratify the note. Barr testifies, positively, that when he endorsed the note it was on its face payable to Weymer and Erb, that Weymer had not endorsed it, and Kammer promised him to get Weymer's endorsement above his ; that after his endorsement, without his knowledge or consent, Weymer's name was stricken out, and his name inserted in its place, on the face of the note, and he never ratified the note, after he learned of these alteration. If this be true there can be no question that he could not properly be held liable, by reason of his endorsement. Kammer admits that he promised Barr to get Weymer, also, to endorse the note, but he says that to the best of his recollection he erased Weymer's name before Barr endorsed the note, but of this he is not positive. He also admits that he put Barr's name, in the place of Weymer's, on the face of the note, but does not say when he did this, whether before or after Barr endorsed. We do not regard this testimony as contradicting Barr's statements. The admission by Kammer that he promised to see Weymer, and get him to endorse the note, strongly corroborates Barr's statement, that Weymer's name had not then been stricken out of the note ; for if it had been, there would have been no occasion for Kammer to make such a promise to Barr. For if Weymer's name was not on the face of the note, and Barr's was there, if Weymer had endorsed it, he would have been but a second endorser, while Barr would have been the first endorser. We can conceive of no reason why Barr should have desired Weymer's endorsement, under such circumstances. Kammer must then have been mistaken in his recollection as to when he struck out Weymer's name, and this he admits he may have been, as he says he is not positive. We must regard the evidence, therefore, as clearly showing that the note was altered after Barr endorsed his name upon it. On

being informed of the alteration he did not promptly notify the holder of the note that he did not hold himself bound thereby; and when he did inform him he did not tell him why he would dispute his liability. And he afterwards attempted to indemnify himself against any loss he might sustain, from having endorsed this note, by taking a deed of trust and order from Kammer. In our judgment this conduct, on his part, does not amount to a ratification of the note, as altered. In this case all the evidence is set forth in the bill of exceptions, instead of the facts proven. In such case, if Kammer's evidence had been irreconcilable with Barr's, it is doubtful whether we ought to have taken Kammer's testimony into consideration, (See *Newlin v. Beard*, 6 W. Va. 110); but our case differs from that in this: that there the court overruled the motion for a new trial, and here they sustained the motion and granted a new trial. Whether the rule laid down, in that case, should be applied when the court grants a new trial, we do not decide, as the question does not properly arise—we not regarding the evidence in this case as really contradictory. The judgment of the circuit court must be affirmed, with costs and $30 damages.

The other Judges concurred.

JUDGMENT AFFIRMED.