# CHARLESTON.

## MORRIS'S ADMR. v. PEYTON'S ADMR.

Submitted September 13, 1886.—Decided November 20, 1886.

1. CONSENT DECREE.

  After the end of the term, at which a consent-decree is entered, it can not be set aside, modified or altered without the consent of the parties except only to correct a clerical error.  (p. 212.)

2. CONSENT DECREE—CLERICAL ERROR.

  A clerical error is a mistake made by the clerk in entering such consent-decree, and it may be corrected by the original draft of the decree furnished the clerk by the court;—or it may be a miscalculation by mistake in some arithmetical operation, whereby a sum entered in such consent-decree, where all the parties are agreed on the basis of the calculation and the mistake is simply an arithmetical mistake or a simple blunder in performing an arithmetical operation all parties being agreed as to the operation to be performed.  (p. 213.)

3. CONSENT DECREE.—CLERICAL ERROR.

  When the error complained of is the insertion of a particular amount in a consent-decree as the result of a calculation by one of the parties upon a basis, which other parties regard as not in accord with the understanding of the parties, such error is not a clerical error but a mistake of parties, and, if it be an error, it can be corrected only by original bill.  (p. 213.)

4. CONSENT DECREE—CONSTRUCTION.

  The court in its decrees carrying into execution a consent-decree must necessarily construe such consent-decree, but it should not put a construction upon any clause therein, until it is called upon to enter such a decree, as renders it necessary to construe such clause.  (p. 218.)

Statement of the case by GREEN, JUDGE:

On the 3d day of February, 1882, there were pending in the Circuit Court of Kanawha county three chancery suits brought against the heirs of W. M. Peyton and others—one by Madison Morris, administrator,—one by Augustus Pack —and the third by William Smoot's administrator. The object of the first of these suits was to subject certain real estate of W. M. Peyton, deceased, to sale to satisfy a vendor's lien thereon. The bill was demurred to, and a motion was made to have the cause consolidated with the other two

causes above named. The court overruled the demurrer and refused to order the three causes to be consolidated. An appeal was taken to this Court, who decided, that the demurrer should have been sustained for the want of necessary parties defendant, and remanded the cause to the Circuit Court of Kanawha for further proceedings. As the record presented to us did not show the nature of the two suits above named and asked to be consolidated with the first, this Court expressed no opinion, whether the three causes should be consolidated or not. A fuller statement of the character of the first cause may be found in 10 W. Va., p. 1.

The records of these two causes presented to us now are still so meager, that no accurate statement of them can be made. All that I can learn from the small portion of the record before us is, that John Thompson obtained a judgment or decree against William M. Peyton on November 1, 1850, for $471.83 with interest from that date and $6.70 costs, which judgment was assigned to Augustus Pack, who instituted his suit to enforce the payment of his judgment or decree out of the lands, of which W. M. Peyton died seized. The third of the above named suits was also brought to enforce the payment out of the lands of Peyton of the amount of a chancery decree obtained by William Smoot against Peyton on December 10, 1856, for $400.00 with interest from that date and $33.93 costs. It also appears, that Allen M. Smith had a judgment confessed to him by W. M. Peyton for $300.82 with interest from December 12, 1857; and that Madison Morris had a debt against Peyton for $551.13 with interest on $151.13 from April 1, 1852, and on $400.00 from April 1, 1853, which debt was secured by a vendor's lien on a part of said lands. One Stephen Holstein also had a debt of $100.00 with interest from April 1, 1852, also secured by a vendor's lien on certain lands of Peyton's. This last debt was assigned to John A. Barker.

This is about all that can be learned from the scraps of record now before us. On the 3d day of February, 1882, the following decree was entered in these three causes:

" By consent of all parties to these causes, these causes came on this day to be heard together upon all the papers, bills, amended bills, process duly served upon all the par-

ties defendant thereto, the depositions, former decrees and reports of Commissioner Fountain, and exceptions thereto, and was argued by counsel. Upon consideration whereof the court is of opinion that the complainant Dickinson Morris, as administrator of Madison Morris, deceased, is entitled to recover of the estate of W. M. Peyton in this action $1,217.87.

"And J. A. Barker, in right of Stephen Holstein, is entitled to recover of said estate in this action $186.00, and for the same they have the right to enforce payment by sale of the Fork Creek lands as set out in the deed from Madison Morris and Stephen Holstein to W. M. Peyton, filed in this cause, and that same is the first lien on said land set out in said deed.

"And the court is further of opinion that in this action Augustus Pack is entitled to recover of said estate $924.34 which is the first lien on all the lands of W. M. Peyton, deceased, after the Morris and Baker special vendor's lien on the Fork Creek lands aforesaid.

"And the court is further of the opinion that J. E. Stollings, as administrator of Wm. Smoot, is entitled to recover in this action of said estate $735.93.

"And that A. A. Rock, as administrator of A. M. Smith, deceased, is entitled to recover of said estate in this action $523.36

"And said two last sums of money constitute the last lien on said lands of W. M. Peyton, deceased.

"The foregoing debts being the principals of the said several original debts due by W. M. Peyton's administrator, with 3 per centum per annum thereon from date of said original debts to this date, and costs of judgments thereon.

"And the court orders that all said sums of money bear interest from this day until paid, and complainants are entitled to recover the costs of these suits in this action including an attorney's fee in each case of $15.00.

"And by like consent, it is agreed that unless said several sums of money are fully paid within three days after this day, then that T. L. Broun, J. M. Laidley and T. B. Swann, hereby appointed special commissioners for that purpose, shall, after giving thirty days' notice of the time, terms and place of sale in some newspaper published in Kanawha county, and circulation of hand bills, proceed to sell at the front door of the

Court House of Kanawha county, the several tracts of land belonging to the estate of W. M. Peyton and set out in the deeds and papers in the report of Commissioner Fontaine filed in this cause November 1, 1873.

"A tract of land on Big Coal river, in Kanawha county, near Lock No. 5, containing 197 acres, including mineral interests; also a tract near and opposite Bull creek, containing 602 acres, in Boone county; also a tract in Boone county, near Lock No. 8, containing 122 acres, including mineral interests; and also a tract in Boone county, opposite Peytona on Round Bottom Branch, containing 333 acres; also a tract on Indian creek and Coon's Branch, Boone county, containing 333 acres; also a tract of land on Fork creek, Boone county, containing 1,706 acres, more or less.

" In making said sale the commissoners will sell each tract separate to itself upon the terms following, to-wit : $\frac{1}{4}$ of the purchase-money cash in hand, and the residue upon a credit of 8, 16 and 24 months respectively, taking from the purchaser or purchasers, bonds with goods personal security for the deferred payments, bearing interest from the day of sale, and retaining liens for same till said bonds are paid.

" But before receiving any money under this decree, the commissioners are to give bond in the sum of $500.00 before the clerk of this court, conditioned according to law.

"And in making sale of the Fork Creek land, it is agreed and understood that the entire interest of W. M. Peyton's heirs in all their land lying on Fork creek, whether embraced in the vendor's lien in favor of Morris' administrator and Stephen Holstein, or not, are embraced in this decree, after deducting the portion thereof assigned to Thomas Fowler's heirs and the interest of T. L. Broun, in said Fork creek lands, as agreed upon by W. M. Peyton, in his life time, and said Thomas Fowler's heirs and said Thomas L. Broun, and which has been estimated as containing some ten thousand acres in the whole, and 1,706 acres more or less as the interest of said Wm. M. Peyton's heirs, be there more or less."

The several amounts named in the decree as due to the several parties named therein with the exception of the amount due to Madison Morris's administrator were found apparently by calculating the interest at three *per cent. per*

*annum* on the principals of the debts from the time, when each fell due, the date of the decree, February 3, 1882. The amount named in the decree as due to Madison Morris's administrator was found by calculating the interest at the same rate not upon the principal of the debt to Morris at the time it fell due, as in the other cases, but upon the amount of the decree in the first cause rendered in favor of Morris on the 23d day of June, 1874, from that date to February 3, 1882, and abating one-half the interest included in said decree. If interest had been calculated on the original debts, when they were contracted, that is, on $151.13 from April 1, 1852, and on $400.00 from April 1, 1853, to February 3, 1882, the amount due to Morris would have been $1,032.30 instead of $1,217.87, the amount stated in the decree of February 3, 1882. Under this last decree the commissioners proceeded immediately to sell the lands named therein as therein directed; and they were all purchased by John L. Cochran, who complied with the terms of the sale. On March 17th, 1882, after the sale, Peyton's heirs filed a petition claiming, that there was a clerical error in the calculation of interest on the debt due to Morris, and that the amount of the debt with the correct interest was $1,032.30, and asked that the same be corrected. Four days after this petition was filed the sale of the lands by the commissioners was confirmed; and the commissioners were ordered after paying costs to distribute the money remaining from the sale in their hands or afterwards collected to the several parties entitled to receive the same according to their several priorities as settled by the decree of February 3, 1882. No reference is made in the decree of March 21st, 1882, confirming the sale to the petition filed on the 17th of the same month. In the papers in these causes there is an answer by Morris's administrator to this petition; but when it was filed, if it ever was filed, does not appear. It simply denies, that any error clerical or other exists in the decree of February 3, 1882, and explains how the amount due to Morris was ascertained to be $1,217.87. The matter involved in this petition seems to have been referred to a special commissioner, Jackson, more than three years after this petition was filed, no action of any sort having been taken in refer-

ence to the matters involved in the petition during that time. On June 1st, 1885, Jackson reported as follows :

" I am requested to report on the matters arising upon a certain petition, filed in these causes on March 17th, 1882, by W. M. Peyton and others, in which it is claimed that there is an error in the amount of $1,217.18 decreed to be paid to Morris's administrator by the decree of February 2d, 1882.

" It is recited in said decree, after directing specifically the various sums of money to be paid to the respective parties, as follows :

" ' The foregoing debts being the principals of the said several original debts due by Wm. M. Peyton's administrator, with 3 per centum per annum interest thereon, from date of said original debts to this date, and costs of judgments thereon.'

"According to my interpretation of this part of the decree, 'the said several original debts due by Wm. M. Peyton's administrator,' mean the original debts due by the said Wm. M. Peyton in his lifetime, and which were due after his decease by his administrator, and the amounts decreed to be paid to all the parties other than Morris' administrator appear to have been calculated on that basis.

" By the deed of March 20, 1861, from Madison Morris and Stephen Holstein to Wm. Peyton, the original debt due from W. M. Peyton, then in his life time, to said Morris, appears to have been $551.13, of which $151.13, bore interest from April 1, 1852, and $400 bore interest from April 1, 1853.

" The following is a statement of these amounts, calculated at 3 per cent. to February 2, 1882, the date of said decree, and result of such difference :

### STATEMENT.

| | | |
|---|---:|---:|
| Principal | $151 13 | |
| Interest 29 years, 10 months, 1 day | 135 14 | |
| | | $286 27 |
| Principal | 400 00 | |
| Interest 28 years, 10 months, 1 day | 346 03 | |
| | | 746 03 |
| Total amount February 2, 1882 | | $1,032 30 |
| Amount decreed to be paid Feb. 2, 1882 | | $1,217 18 |

Amount due at 3 per cent., Feb. 2, 1882 . . . . . . . . .    ·        1,032 30

Balance overpaid by this calculation. . . . . . . . . . .                $184 88

Balance remaining due Morris & Barker, as of Jan-
    uary 3, 1885, as calculated above, (page 8.) . . . . .       $238 19
Amount overpaid by above calculation, as of Feb-
    ruary 2, 1882 . . . .  . . . . . . . . . . . . . . . . . . . . . . . . .  .   $184 88
Int. to Jan. 3d, 1885, 2 yrs, 11 mos., 1 d . . . . . . . . .    32 37
                                                                        217 25

Balance due M. & B. Jan. 3, 1885, by this calcula-
    tion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    $20 94

"It is claimed by Morris' administrator that the meaning in said decree of the language above quoted, in reference to his claim, is that the decree rendered against Peyton's administrator in the, suit of Morris' administrator *et* heirs, is the original debt due by Wm. M. Peyton's administrator, and that that sum should · bear 3 per cent. interest, which is the amount decreed to be paid by the said decree of February 2, 1882. I do not think that this is the meaning of said decree. But it raises this difficulty: Supposing there is such an error in said decree as is claimed by the petitioners, and as your commissioner thinks, whether it can be regarded as a clerical error correctible, on motion, within five years, under section 5 of chapter 134, of the Code of West Virginia, or whether it must be considered a judicial error not correctible under said chapter. (*Compton* v. *Grant*, 5 Grat. 137.)

"The final decree, rendered March 21, 1882, takes no notice of the said petition filed March 17, 1882, and to such final decree a bill of review would now come too late.

"Your commissioner, therefore, submits it to the decision of the court to determine whether your Honor can grant relief for such error."

In the meantime the purchaser, Cochran, had paid the commissioners all the purchase-money except $250.00; and it had been disbursed. This $250.00 was due March 20th, 1884, and was retained because of taxes previously due and deficiencies in the quantity of land, which he bought. This sum so retained with interest to June 19th, 1885, amounted to $298.00. The matters connected with the claim had been referred to commissioner Ruffner, who had reported. A

number of depositions were taken to prove, that the decree of February 3, 1882, was in all its provisions a consent-decree intended to carry out a compromise and agreement, which the counsel of the different parties or the parties themselves agreed to. By them it appears, that Thomas L. Broun had found a purchaser of all these Peyton lands, who was willing to give for them, as one witness says, the amount of the claims in this suit, if half the interest on the debt should be remitted; but Broun says, that the purchaser, he was acting for, was willing to pay the original amount of the debts with three per cent. interest thereon; and that all the parties or their counsel assented to take this for their debts, that is, to have their claims reduced that much, and remit any claim, they might have on one undivided third of the land, which Broun had purchased of W. M. Peyton in his lifetime.

It is obvious, that the proposition to reduce their debts by remitting half the interest, differs essentially from the proposition stated by Broun, as under the former the interest on the debt due to Morris's administrator would be compounded; for a decree had been rendered in his favor in 1874, including the interest up to the date of the decree, while under the latter proposition interest would be paid only on the original debt. And this is the occasion of the principle controversy in these causes now before this Court.

I deem it unnecessary to say more about these depositions, as it is clear, they can not be considered by this Court.

A controversy also arose between J. E. Stolling as administrator of William Smoot and A. A. Rock, administrator of A. M. Smith, whether by said decree of February 3, 1882, the debts due to said parties were to be paid *pro rata* as in the last class together. On this point also depositions were taken:

On the 19th day of June, 1885, the court rendered the following decree:

" These causes came on this day to be heard upon the papers heretofore read therein, and upon the reports of Commissioner Ruffner and of Commissioner Jackson filed therein, with depositions of witnesses and exceptions in writing filed to said reports; and upon the answer of J. L. Cochrane filed

to said rules taken against him in April, 1884, which answer is a substitute for his answer to said rule filed April, 1884, and lost and was argued by counsel.

"Upon consideration whereof, the court is of the opinion that the several complainants named above—creditors of Wm. M. Peyton—under their agreement made during the progress of these causes as set forth in their amended bill, filed 14th of January, 1882, and in the decree of 2d February, 1882, are entitled to receive from the proceeds of sales of Peyton's lands, made in these causes, the principal of their several original debts against W. M. Peyton, with 3 per cent. interest thereon from the time they severally fell due, and costs of judgment therein, as set out in said decree of 2d February, 1882. The court is of the opinion that the several sums of money going to the administrators of Pack, Smith and Smoot, are correctly set forth in said decree, but in said decree there is a clerical error giving to Morris and Barker $184.58 more than they were entitled to receive on the *principle* of reducing said debts, as agreed upon in said decree, which sum should be corrected now. The court doth adjudge, order and decree that the true balance now due and owing to Morris and Barker is $20.94, which said balance of $20.94, with interest thereon from 5th January, 1885, the court orders to be paid to said Morris and Barker under the decree of 2d February, 1882, as all they are entitled to receive in this cause.

" And the court is of the opinion, and doth adjudge, order and decree that if there is any surplus after paying said several creditors named at the caption of this suit, their principal sum and 3 per cent. interest and costs of original judgments as aforesaid, the same shall be applied to costs of their suits.

" And the court is of the opinion there is still due from J. L. Cochrane aforesaid, a balance of said purchase-money of said lands of $298.00, and that he is not entitled to any abatement of the said purchase-money under the circumstances of this case for taxes existing on said lands when sold, or for any deficiency in the quantity of same as claimed in his answer to said rule, and the court doth adjudge, order and decree that said Cochrane shall pay over said sum of $298.00,

with interest from this day, and costs of this rule aforesaid, to Commissioners Laidley, Broun and Swann, by them to be distributed under the decree of 2d February, 1882, as modified by this decree, and upon his failure to pay the same at once, the court reserves the right at this term to order a re-sale of said lands to make said sum of money, if asked to make said re-sale by any party to these causes interested to collect said money.

" And it appearing to the court that by the amended bill of 14th January, 1882, and by the decree of 2d February, 1882, Smith and Smoot's administrators, under the agreement aforesaid, are to stand in the same class and be paid as of same grade, the court orders that the moneys hereinafter coming to them in this cause, shall be paid *pro rata*, and that this rule shall be applied to payments heretofore made to them in these causes. And the court doth overrule all exceptions taken to the reports of Commissioners Ruffner and Jackson, which are at variance and in conflict with the principles contained in this decree, and doth sustain all exceptions taken to said reports, which are in accord with this decree. And the court is of the opinion and doth adjudge, order and decree, that under the amended bill of 14th February, and under the decree of 2d February, 1882, when said sum of $298.00 is paid as above ordered to be paid, the lands of W. M. Peyton, sold to J. L. Cochrane as aforesaid, by the court through its commissioners in these causes, and ⅛ interest of T. L. Broun in said lands, will be relieved from all liability to complainants, and to all of them, for their debts set out in these causes.

" And the court doth order Morris and Barker, and Smith and Smoot's administrator, out of the moneys coming to them severally in these causes, each to pay ¼ of the costs of the references made in these causes to Commissioners Ruffner and Jackson, including the fee to the clerk of this court.

" And the court doth order Commissioners Laidley, Broun and Swann, out of any moneys in their hands to the credit of these causes, to pay any unpaid costs of these suits. "

On January 23, 1882, Dickison Morris, administrator of Madison Morris, presented to the court a bill of review to this decree for errors apparent on its face and asked

leave to file the same, which was objected to by the defendants; and upon due consideration the court sustained the objection and refused to allow the bill of review to be filed. To which order as well as to the said decree of June 19, 1885, and an order of June 23, 1885, retiring the causes from the docket Dickison Morris, administrator, has obtained an appeal.

*J. M. Laidley* for appellant.

*T. L. Brown* and *T. B. Swann* for appellees.

Green, Judge:

The first inquiry is: What is the character of the decree of February 3, 1882, which has been copied at length in the statement of this case? Of course its character can only be determined by what is set out on the face of the decree. Though the depositions, taken several years after this decree was entered, show clearly, that it was intended as a consent-decree, all of the terms and provisions in it being the result of a compromise among the parties to the three suits, in which the decree was entered, or their counsel, yet it is obvious on the face of the decree as entered, that the most important provision in it was the judgment of the court after an argument by counsel and consideration by the court of the different bills and amended bills, depositions, former decrees, report of a commissioner, exceptions thereto and all the papers in the three causes. It was after such a consideration, that the court determined the amount, to which each party was entitled; and the court inserts in the decree as the result of such investigation not only the amount each one was entitled to, but also that the amounts due to several of them were liens upon certain lands. This, the most important part of this decree, was palpably erroneous as to the amount due to each of the parties, which is clearly shown by the very documents, upon which the calculations of the decree profess to be based, to be larger than that allowed by the decree. Of course this decree was erroneous and on appeal would have been reversed. Even now, as the decree was rendered before March, 1882, and this appeal was taken in less than five years after, the decree would be reversed, but

for the fact, that the parties in these causes are estopped from asking for such reversal, and especially the appellant in this cause, as he has in his pleadings repeatedly insisted that every part of the decree, especially the part settling the amounts, he and others were entitled to recover, was a consent-decree, the result of a compromise.   Thus in the bill of review, which he tendered to the court speaking of the sum ($1,217.87) which the decree decided was due to him, he says: —"There was no agreement whatever made by him in the progress of said cause except that set forth in the consent-decree of the 2d of February, 1882, in the precise language there employed and for the sum therein named."

I shall therefore treat this entire decree as a consent-decree, the parties to it having by their conduct in the Circuit Court and ever since it was entered in the court below estopped themselves from saying, that the whole of it is not a consent-decree.   Without referring to the depositions since taken on the objects and terms of this consent-decree, which clearly show, that the whole of the decree was intended to be a consent decree, it clearly appears, that during the pendency of the cause in the Circuit Court it was always so regarded by all parties.  I have no right to consider these depositions; for the terms of a decree can not be changed by any depositions.  But I can discover from the pleadings and the conduct of the parties ever since, that the whole of this decree was a consent-decree, and they are estopped from denying it in this Court.   This makes it in effect a consent-decree in all its parts.   Treating it as a consent-decree what control over it had the court below or has this Court?

First—As such a decree is not the judgment of the court upon the merits of the case but the act of the parties to the suit, it is obvious, that it can not be modified, set aside or annulled by any order in the cause made by the court below without the consent of all the parties to the cause, unless set aside during the same term of the court, which would leave matters in the same condition as if it had never been entered.   Nor can it be appealed from, nor modified by this Court, unless perhaps, it should be so entirely foreign to the matters in controversy in the cause, that for this or some other reason the court below had no jurisdiction or au-

thority to enter any such decree by consent or otherwise. (*Manion* v. *Fahy*, 11 W. Va. 482, pt. 2 of Syll.). As shown in that case, it makes no difference, that such consent-decree was procured by fraud; or that through a mistake of the parties the decree as entered was different from what they intended it to be. In such case the party injured by such fraud or mistake can have such consent-decree set aside or modified by an original bill; but it can never be set aside by any order of the court in the cause after the end of the term, in which it was entered; nor can it during the term or afterwards be modified except by consent. (*Manion* v. *Fahy*, 11 W. Va. 482, Syll. pts. 3, 4, 5, 6.) There is however one species of mistake in a consent-decree, if it can properly be called a mistake, which the court may correct at a subsequent term; that is a clerical error. And when a clerical error is shown to exist, it is corrected, because it is shown to the court, that the decree as entered is not the decree intended to be entered by the parties or by any one of the parties. If it is the decree, which any one of the parties intended to be entered, though it be not the decree, which all the others intended to be entered, it is clearly not a clerical error but an error or mistake of the parties themselves, they differing in opinion as to the decree, which they had consented should be entered; or it may be a fraudulent preparation of a decree by one of the parties, when there was a perfect understanding as to what consent-decree was to be entered. In neither of these cases, as we have seen, can the court correct such a decree by any order made in the cause. It can be corrected or set aside only by an original bill brought for the purpose. If however a correct decree is drawn up by the parties, who all understand it alike, and it is endorsed by the judge of the court to be entered, and the clerk in copying it on to the record-book makes a mistake, whereby its meaning is changed materially, this is obviously a clerical error. It is no mistake of the parties but a mistake of the clerk alone, and such a mistake, when made apparent to the court by producing the original decree given to the clerk to be entered, may be corrected by the court at a subsequent term without the consent of all the parties. This is properly a clerical error; but the term is sometimes extended to include other errors.

If for instance the parties have agreed upon the terms of a decree, and all the parties understand alike all the provisions to be inserted therein, and one of the parties or a clerk in making necessary arithmetical calculations commits an error, so that a wrong amount is inserted in the decree, that would be regarded as a clerical error, which may be corrected at a subsequent term of the court without the consent of all the parties, provided of course the existence of such error can be shown in the manner, in which the law permits such error to be shown. Such clerical error can not be shown by depositions subsequently taken in the cause but should clearly appear from the face of the decree itself aided only by previous portions of the record or proceedings, as by a previous verdict, report of commissioner, bond or other writing filed in the cause, or by some part of the record previous to the entering of said consent-decree.

Applying this law to the decree of February 3d, 1882, there appears in it no clerical error, which the court could correct at any subsequent term. It is claimed, that the amount, which Morris's administrator is entitled to recover from Peyton's estate is really $1,032.30, though in the decree it is stated to be $1,217.87; and that this variance is the result of a clerical error. This claim would be more plausible, if these two sums corresponded in all but one figure instead of differing, as they do, in all but one figure. It is said however, that in spite of this strong improbability the insertion in the decree of this $1,217.87 is shown to be a clerical error by the fact, that after the clause stating the amount, which each party is entitled to recover, the following words are added :—"The foregoing debts being the principals of said sevéral original debts due by W. H. Peyton's administrator with three *per cent. per annum* thereon from date of said original debts to this date and costs of judgment therein."— And if we regard these words as meaning, as they are claimed to mean. that this $1,217.87 was intended to be the amount of two bonds given to Madison Morris by Peyton in 1852 and 1853, with three *per cent.* interest thereon, then, as shown by commissioner Jackson's report, the true amount is $1,032.30, and therefore this $1,217.87 must have been a sim-

ple miscalculation and could not have been inserted in the decree, if it had been known to the counsel of Madison Morris.

It seems highly improbable, that in a calculation of interest on two small bonds there should have been an error of $184.88; and that such a mistake was not made is apparent from the record, from which it appears, that no judgment was ever rendered on these two bonds, but a decree was rendered in the first of these causes against the administrator of Peyton on June 23, 1874, for the amount of this debt. The decree was for $1,289.44 with interest from June 23, 1874. Calculating this interest to the date of the consent-decree, February 2, 1882, this debt would amount to $1,845.78, the principal of which was $551.13 and the interest $1,294.65. If instead of calculating the interest at six *per cent.* it had been calculated at three *per cent.* it would have been $647.32, which with the principal would have amounted to $1,198.46. If to this we add $19.41, the costs, we get $1,217.87, the amount inserted in the consent-decree as due to Morris's administrator. This seems to me more probable than the theory of a mistake amounting to the large sum of $184.88 in the calculation of interest. It is true, this mode of calculation compounds the principal and interest and makes it all an interest-bearing fund from June 23, 1874, the date of the decree; and the evidence shows that the principal and interest were compounded at that time. One of the counsel of the appellees testifies, that the understanding was, that all the creditors would accept the proposal made by Cochran, which was as follows:—"If they would knock off one half the interest on their debts and let Major Broun's one third of the interest in the lands, which he has gotten from Peyton, go free from the debts, Cochran would bid a sum at a judicial sale under a decree sufficient to cover the principal and one half the interest."—This according to our calculation above seems to be just what the counsel of Morris's administrator did. We have no right in this suit to look at this or any other deposition to ascertain the terms, which were to be inserted in this decree, for any dispute about them can be settled only by bringing an original suit to modify or set aside the consent-decree. But our

calculation shows, that, if the insertion in the decree of $1,217.87 instead of $1,032.30 was a mistake, it was not a clerical mistake but a mistake of counsel and can not be corrected in this suit.

The language used in the decree :—" The foregoing debts being the principal of said several original debts due by W. M. Peyton's administrator with three *per cent. per annum* thereon from the date of said original debts to date and costs of judgment."—is not very appropriate to describe the appellant's debt, on which a judgment was never obtained, but upon which a decree was rendered against Peyton many years after his death. Of course it was a matter of but little importance to the appellees, whether the interest on their debts was or was not compounded ; for they obtained their judgments against Peyton so soon after they fell due, that the interest was small. But to the appellant it was a matter of considerable importance, as he did not get his decree till more than twenty years after the debts were due. For this reason the parties would naturally calculate the interest differently on their respective debts, each interpreting a vague verbal understanding to suit his own interest. If there is a mistake in this decree, it was made by counsel in drawing the decree, not in calculating the interest. The calculations were right, but the bases of the calculations were different. This according to the law, as we have laid it down, was not a clerical error; and the court in this suit had no right to modify or alter the decree, even if satisfied that counsel had in drawing it made a mistake of this character. The court ought not to have gone into the question as to how the decree should have been drawn.

There was a special reason, why the Circuit Court should not have undertaken to modify this consent-decree at the time it did. If the parties, before this decree was entered, did not know the mode, in which counsel for Morris's administrator had calculated the interest so as to make the debt $1,217.87, as they ought to have known, the record on its face shows, that they did know it six weeks thereafter ; for on the 17th day of March, 1882, they filed a petition claiming, that this statement of the debt was a clerical error, and asking, that it might be reduced. These proceedings how-

ever seem to have been abandoned almost as soon as commenced; for only four days afterwards the cause was heard, and no mention is made of this petition, and a decree was entered entirely ignoring it and directing the proceeds of the sale, which had just been made, to be paid out according to this consent-decree, thus in effect directing the $1,217.87 to be paid. Nor do we ever hear of any effort to reduce this sum till more than three years afterwards. This certainly has all the appearance of a deliberate abandonment of the present claim by the appellees.

The court, while it had no right to modify or alter this consent-decree, had a right to construe it, and indeed necessarily did so, when it undertook to carry it into effect. The court should have construed it, as we have seen, just as though the words—" The foregoing debts being the principals of said several original debts due by W. M. Peyton's administrator with three *per centum per annum* thereon from date of said original debts to this date and costs of judgment therein "—had been omitted therefrom. For the decree, as we have seen, meant just what it would have meant, had these words not appeared in it.

The next question as to the meaning of this decree is: Does it put the last two debts in one class? The decree after determining that William Smoot's administrator is entitled to recover of Peyton's administrator $735.93 and that A. M. Smith's administrator is entitled to recover $523.36 adds:— "And said last two sums of money constitute the last lien on said lands of W. M. Peyton, deceased." If we look only at the decree, the conclusion must be, that all parties consented, that these two debts should constitute the last lien, and of course neither could have priority over the other, for then only one of them would constitute the last lien. And this all the records show to be the fact. Yet for some reason not disclosed the parties agreed in this consent-decree, that these two debts should constitute one and the last class. Some depositions were taken to show the understanding and intention of the parties; but, as we have seen, we can not consider them. In this suit we must be controlled by the consent-decree.

We will now consider the decree of June 19, 1885, ap-

pealed from and determine, wherein it accords with, and wherein it violates, the principles, we have laid down. The first clause is a modification of the consent-decree of February 3, 1882, in accord with the report of Commissioner Jackson and is erroneous. The second clause directs, that the surplus after paying to the several parties the amounts named in the decree of February 3, 1882, as amended and corrected shall be paid on the costs of these suits. I presume, that there will be no surplus in the hands of the commissioners after the payment of all the debts provided for in the decree of February 3d; and none of the proceeds in their hands should be applied to the payment of the costs of any of these suits, until all these debts have been paid in full; and therefore this clause of the decree is erroneous, as well as the last clause, which directs the commissioners to pay out of any money in their hands any unpaid costs of these suits. The third clause, which decides, that there is in the hands of J. L. Cochran unpaid purchase-money to the amount of $298.00, and that he is entitled to no abatement therefrom, and orders him to pay it with interest from that day and the costs of the rule against him to the commissioners, is correct; and the record before us shows, that it has all been paid as therein directed. So that this portion of the decree has been properly executed. But this part of the decree is erroneous, so far as it directs said commissioners to distribute this money, when received, under the decree of February 3, 1882, as modified by this decree. It should have directed this payment of the money under the consent-decree of February 3, 1882.

The fourth clause of said decree is correct, so far as it construes the decree of February 3 to put the debts due to the administrator of A. M. Smith and those due to the administrator of W. Smoot in the same class, and to provide for their payment as of the same grade and *pro rata* and applies this rule to the payments heretofore made to them in these causes. But the court erred in putting any construction upon the last clause in the decree of February 3 at this time, as there has been no attempt to sell the one third interest of Broun in the lands of Peyton, and it is manifestly improper to put any construction thereon, until such attempt shall have

been made. The part of said decree therefore, which adjudges, that—" when said sum of $298.00 is paid, as above ordered, the one third interest of said T. L. Broun in said lands sold J. L. Cochrane will be relieved from all liability to complainants and to all of them for their debts set out in these causes"—was a premature adjudication and should therefore be set aside, this Court expressing at present no opinion on this point.

The fifth clause in said decree, which adjudges, that the administrators severally of Morris, Barker, Smith and Smoot shall each pay one-fourth of the costs of the references to commissioners Ruffner and Jackson including the clerk's fee is erroneous. These references were for the benefit of the administrator of Smith and the administrator of Smoot exclusively, as their purpose was to increase the funds for distribution, and these two parties were in the last class and would therefore receive all the advantage of any increase of said funds; for according to the views, I have expressed, this fund can not be increased by diminishing the amounts named in the decree of February 3, 1882, as coming to Morris's administrator and Barker.

An amended bill filed January 14, 1882, is referred to in this cause, as if it set forth some agreement between the parties to these causes. There is no reference whatever in this amended bill to any agreement of any sort between these parties. It was filed to made additional parties defendant; and in it are two allegations or statements, which, it is claimed, aid in the true interpretation of the last clause of the decree of February 3, 1882. A deposition was taken to show under what circumstances and with what objects this amended bill was filed. As I deem it improper at this time to construe this last clause, it is unnecessary to state the contents of the amended bill.

The following decree was entered in the cause of *Morris's Administrator* v. *Peyton's heirs et al.* on the 23d day of June, 1885:

" Special commissioners, T. B. Swann and T. L. Broun, this day filed their report showing the payment of $298.00 by John L. Cochrane and the disbursement thereof by said Swann and Broun to the several parties entitled to the

same, as required by the decree rendered at this term of the court in the above causes. Upon consideration of all which matters the court doth approve and confirm said report and disbursements made and doth direct the bond executed by said J. L. Cochrane for the deferred purchase-money, $2,640.80, to be cancelled and the vendor's lien retained in the said deed to said Cochrane to be released by either one of the two commissioners, who executed the said deed, to wit: T. L. Broun or J. M. Laidley. And the court directs the said several causes to be retired from the docket."

This decree, one of those appealed from, though headed as entered in only one of these causes seems to have been intended to be entered in all of them, as it concludes:—"And the court directs the said several causes to be retired from the docket."—It is in this respect erroneous but in other respects correct. The disbursements by the commissioners having been made under a previous order of the court were properly affirmed ; but, as the order directing these disbursements was erroneous, the causes should severally be retained in court, in order that the funds improperly paid to parties may be required by the court to be refunded and paid to the parties entitled thereto.

It has been claimed in argument, that the decrees of February 3, 1882, and of March 21, 1882, are not appealable. But, as it is not disputed, that the decree of June 19th, 1885, was a final decree and finally settled all the principles in these causes, and the decree of June 23, 1885, ordered the retirement from the docket of these causes as finally ended, and as both these decrees were appealed from, it is immaterial, whether the previous decrees were or were not appealable ; for the appeal from the final decree necessarily brings before this Court for review all previous decrees, upon which it is based, although they may not be appealable. ( *Camden* v. *Haymond,* 9 W. Va. 68 ; *Watson* v. *Wigginton,* 28 W. Va. 552, 3). And, as the decrees of February 3, 1882, and of March 21, 1882, were entered before March 27, 1882, the appellant had five years, within which to appeal from them, and as he took his appeal on the 14th day of February, 1886, he actually appealed in less than four years after the date of the first decree.

For these reasons the decree of June 19, 1885, and that portion of the decree of June 23, 1885, which retires the causes from the docket, must be reversed and annulled; and the appellant must recover of the appellees, J. E. Stolling, administrator of William Smoot, and A. A. Rock, administrator of A. M. Smith, the only appellees really interested in this controversy, to be paid out of the assets of their intestates severally in their hands to be administered, his costs in this Court expended; and these causes must be remanded to the Circuit Court of Kanawha county to be further proceeded with according to the principles laid down in this opinion and further according to principles governing courts of equity.

SNYDER, JUDGE:

The conclusion reached in the foregoing opinion, I think, is correct, and I therefore concur in it; but I do not concur in the opinion or the legal principles therein announced. It seems to me that a consent-decree is a contract or agreement between the parties to the suit entered of record in the cause with the consent of the court. Such consent-decree may or it may not be founded upon the pleadings and proofs in the cause. It is certainly not necessarily based upon the record or any report, paper or exhibit filed in the suit. It may be wholly or in part independent of any matter or paper in the record, and may be even contradictory or the reverse of what these show ought to be the decree. In this respect it differs radically from a decree entered upon the decision of the court. Such decree must of necessity be founded upon the pleadings and proofs in the cause. I can therefore, readily appreciate the propriety of correcting decrees of the latter description by reference to the records and proofs filed in the cause, but, it seems to me, this mode of correction has no application to decrees of the former kind. In *Attorney General* v. *Tomline*, L. R. 3 Ch. Div. 388, decided in 1874, it was held that, " when a consent order has been drawn up, passed, and entered, it is not competent to this court to vary that order, except for reasons which would enable the court to set aside an agreement."

In 2 Dan. Ch'y Pl. & Pr., 973, 974, the practice is stated as follows : " It may be mentioned, with reference to the subject of consent causes, that a decree or order, made by consent of the counsel for the parties, cannot be set aside, either by rehearing or appeal or by bill of review ; unless by clerical error, anything has been inserted in the order, as by consent, to which the party had not consented, in which case a bill of review might lie. If, however, the decree has been obtained by fraud, relief may be had against it by original bill."

In *Brodish* v. *Gee*, Ambler 299, it was decided that, " Where a decree is made by consent of counsel, there lies not an appeal or rehearing, though the party did not really consent ; " but in such case the remedy is by original bill. In *Stark* v. *Thompson*, 3 Mon. 302, it was held, that one affected by a decree, though not a party, *may aver and prove* that it was entered by an agreement of the parties, though it contradict the record. See also, *Lewis* v. *Lewis*, 1 Min. (Ala.) 35 ; *Atkinson* v. *Manks*, 1 Cowen 693 ; *French* v. *Shotwell*, 5 Johns. Ch'y 564.

What is meant by clerical errors in the above quotation from Dan. Ch'y appears from another part of the same book, where it is stated : " The court will, in some cases, extend the indulgence of rectifying decrees in which there have been clerical mistakes, to decrees which have been actually enrolled. Thus, in cases of miscasting where the matter *demonstratively appears upon the decree itself* to have been mistaken, it may be explained and rectified by order ; so, likewise, if some part of the decree be omitted in the enrollment, it may be inserted upon motion to the court. It is to be observed, that, under the denomination of miscasting, is not to be included any pretended miscasting or misvaluing, but only error in auditing and numbering. In *Weston* v. *Haggerston*, G. Coop. 135, Lord Eldon held, that all errors on the face of the schedules could be rectified, even after enrollment, but that there could be no correction except of such apparent errors ; and he therefore held that no affidavit introducing a new fact, could be permitted after enrollment "—2 Dan. Ch'y Pl. & Pr. 1,030–31 section 1,144 ; *Miller* v. *Rushforth*, 3 Green Ch'y 174 ; *Lester* v. *Mathews*, 58 Ga. 403.

The above quoted text refers to the correction of clerical errors or mistakes in final decrees entered by the court and not by the consent of the parties. After considerable research, I have been unable to find any case explaining what is meant by a clerical error or mistake in a consent-decree. I take it, however, that the rule for correcting such errors by motion or upon bill of review is no less rigid and restricted than the rule laid down in Dan. Ch'y for the correction of such errors in enrolled decrees entered by the court without consent. Consent-decrees being generally compromises, entered with but little or no reference to the pleadings, proofs or amounts shown by the papers to be in controversy, and often based upon amounts or other considerations nowhere appearing in the record or in any claim or paper filed in the cause, it seems to me, it would be a very illogical and dangerous rule, that would allow the correction of even what appeared to be clerical errors or mistakes in such decrees by any pleading, exhibit or paper in the cause upon motion or bill of review. I think the rule should be more limited and restricted in the correction of such errors in consent-decrees than it is in enrolled decrees. It seems to me that it would be very hazardous to look beyond the decree itself, or the descriptions and references therein made and so identified as to leave no reasonable doubt of what was intended to be embraced in or affected by the decree. Corrections of this character would permit the insertion of consequential matters, which the decree as entered demonstratively shows to be essential to give it the effect and operation intended by the parties consenting to it, but the matters thus inserted must be apparent from the decree itself and necessarily consequent upon it. Of course other matters may be considered in the construction and application of the decree. What I have said has no reference to the construction of the decree, or to setting it aside for fraud, but simply to the correction of clerical errors or mistakes in transcribing it. Where there is a mistake as to what was agreed upon by the parties or fraud in the procurement of the consent, the decree stands like any other agreement or contract and can be reformed or set aside, if it can be done at all, only by original bill and upon proof of the same character and conclu-

siveness that it would require to reform or set aside any other agreement or contract between the parties. In so far therefore as these views differ from those expressed in the foregoing opinion of Judge Green, I dissent from that opinion.

REVERSED.   REMANDED.