## The Fair v. City of Chicago et al.

### Gen. No. 13,322.

1. TRANSCRIPT OF RECORD—*when presents nothing for review.* A decree shown by a transcript which contains no evidence nor agreed statement of facts and nothing to indicate upon what the court predicated its findings of facts and conclusions of law, presents nothing for review.

2. DECREE—*when entered by consent.* A decree is deemed to have been entered by consent where the appellant in its brief states that a draft of a decree was prepared and presented by appellee, which was unsatisfactory, that a new draft was prepared which draft "was modified to some extent and then presented to the judge by both parties and by the judge signed."

3. DECREE—*when not subject to review.* A consent decree is not a judicial sentence but is the solemn and binding agreement of the parties and not subject to review.

Bill for injunction, etc. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed July 1, 1907.

**Statement by the Court.** Appellant is an Illinois corporation conducting a general merchandise and department store business in a building of modern construction, adapted to its varied and extensive business

operations, occupying one-half of a city block bounded on the south by Adams street, on the west by Dearborn street, on the east by State street, and on the north by an alley dividing the block which is environed as described, and bounded on the north by Monroe street. The building has a street frontage on Dearborn and State streets of 190 feet and on Adams street a frontage of 350 feet. The bill avers *inter alia* that the building and improvements cost and are of the value of two millions of dollars. That the building was so constructed that the space under the sidewalk from the building line to the roadbed skirting the three streets on which said building fronts, could be used as an integral part of said building, and that the same has been and still is occupied as a part of the building in the business of appellant. That an entrance of the uniform width of about forty inches was constructed from the sidewalk to the space occupied by appellant beneath the sidewalks on Adams street, descending from the surface of the sidewalk to the space thereunder. That such entrance is surrounded by a suitable iron railing protecting foot passengers in traveling along the sidewalk on Adams street from any danger which would otherwise menace their progress along said sidewalk in front thereof, by their unwittingly falling into the area-way thus created. That all of such occupancy and the placing of such entryway has been with the knowledge, consent and permission of the city of Chicago, to whom tribute in the shape of rents has been paid under municipal ordinances and by agreement with its officers. That the common council repealed all the then existing ordinances touching entrances into and occupancy of space under the sidewalks of the city, and on February 5, 1906, passed an ordinance requiring, among other things, that a permit be obtained before any person shall use space underneath the surface of any street, that a bond in the penalty of ten thousand dollars be

filed, conditioned to pay the rent prescribed by the ordinance, and to save the city harmless against damages, etc., and fixes the rate of rental to be paid the city for the space occupied.

The bill then avers (R. p. 9): "The acting commissioner of public works has notified orator if it desires to continue the use of said space under the sidewalks, to immediately take out a permit, pay compensation, furnish bond, and comply with each and every of the provisions of said pretended ordinance of February 5, 1906. Said commissioner insists that he will and is about to enforce said last mentioned pretended ordinance against your orator, and threatens to and will proceed to close the space under the sidewalk upon which your orator's said premises abut, and also to deprive your orator of its right to use said staircase and entrance unless your orator first takes out such permit, pays compensation, furnishes bond, and recognizes the legality of and complies with the provisions of said pretended ordinance of February 5th, 1906; that if said threats are carried into execution, his action would work great and irreparable damage to your orator, and prevent it from using and enjoying said building, improvements and appurtenances, said entrance and staircase and said space under said sidewalk, and deprive orator of the benefits and profits derived therefrom."

The bill prays that appellees and their successors (R. p. 21) "may be enjoined and restrained from interfering with the stairways and entrances to the basement of The Fair building, or the improvement thereof, or from taking possession of or tearing down, removing, destroying or interfering or in any manner injuring or causing to be injured any of your orator's said entrances, or any part of any such entrances, or of any structures composing or covering any of said entrances, and upon the final hearing hereof, if this Court shall be of opinion and shall so order, that your orator

The Fair v. City of Chicago.

shall pay to said City of Chicago compensation for the use of the space occupied by said stairway, then your orator offers to pay such sum as compensation therefor, as to this Court shall seem fit and proper and shall order," and for general relief. (R. p. 22.)

Appellees answered the bill, and after admitting that appellant was engaged in the business alleged and occupied in the prosecution of such business the building situated as described, and the passage of the ordinance of February 5, 1906, and that appellees sought to secure a recognition of the ordinance by appellant, and its enforcement against appellant, proceeds categorically to deny every essential material allegation of the bill, in the verity of which appellant grounded its right to the relief sought.

The city of Chicago, on March 24, 1906, filed its cross-bill in the cause against "The Fair," in which it makes, among other charges, the following: That there has been for more than fifty years within its limits and control a certain public highway running parallel a uniform width of sixty-six feet from State street to Dearborn street known as Adams street, upon which one of the fronts of the building of "The Fair" set out in the original bill is aligned. That for more than thirty years there has been and still is in force an ordinance of the city providing that in all streets of the width of sixty-six feet the sidewalk shall be of the width of fourteen feet, and shall incline upward from the outer edge thereof toward the line of buildings or lots at the rate of one inch in three feet, and that "The Fair," in violation of such ordinance and regulation, in 1900 constructed a sidewalk contrary to its provisions, and persistently maintains the same against the vigorous and oft-repeated protests of the city, and that in further violation and disregard of the ordinances of the city and (R. p. 46) "solely for the purpose of accommodating its own self, for the better and more convenient transaction of its own business, and wholly

without regard for the rights or convenience of the people, and without any authority in law, destroyed and removed a certain portion of said sidewalk of great length, to-wit: the length of 18 feet, and of great width, to-wit, the width of 14 feet, and has thereby rendered it and still does render it impossible for the people to travel over that portion of the street." That such opening is maintained against the continued protest of the city and its demands to abolish it.

The cross-bill further avers that said opening is a nuisance and purpresture maintained by "The Fair" in defiance of the municipal law and the rights of the public, and prays that said sidewalk and opening may be decreed to be a purpresture and a nuisance, and that "The Fair" be commanded within a short time to close said opening and rebuild the sidewalk conformable to the ordinance, and that "The Fair" be perpetually enjoined from further maintaining the said opening, and for general relief.

To this cross-bill "The Fair" (R. p. 50) filed an answer denying most of its material averments and disputing the right of the city to the relief prayed, and insisting that the sidewalk and opening therein are lawfully maintained, etc.

On July 16, 1906, a decree was entered dismissing the original bill for want of equity and decreeing the relief sought by the cross-bill of the city of Chicago. (R. pp. 57 to 75.)

There is an extended finding of fact in the decree in the main sustaining most of the material averments of the original bill, except where they are in direct conflict with the averments of the cross-bill relating to the building and maintaining the sidewalk and the opening thereon on Adams street, and as to those the findings are in conformity to the averments of the cross-bill.

The decree commands "The Fair" within ninety days to reconstruct the sidewalk on Adams street according to the terms of the ordinance, and to close

the opening therein, and keep the same closed for-
ever thereafter, and also to remove the fence guarding
said opening, and that it restore said sidewalk at the
place of the opening, so that thereafter it shall be
open and available for travel "throughout its entire
length and breadth in front of the premises occupied
by said 'The Fair.'" Costs were adjudged against
"The Fair." From this decree "The Fair" prose-
cutes this appeal.

VAIL & PAIN, for appellant.

WILLIAM D. BARGE, for appellees; JAMES HAMILTON
LEWIS, Corporation Counsel, of counsel.

MR. JUSTICE HOLDOM delivered the opinion of the
court.

The foregoing statement from the record is made
for the purpose of setting forth the general scope of
the pleadings and the relief sought, and to emphasize
the limitations within which the decree was formu-
lated. The record does not disclose any hearing
before the court or any motion made prior to the
entry of the decree, and no order other than the de-
cretal order appears in the record. There is no evi-
dence of any character in the record. Neither can we
find any agreed statement of facts in the record to
supply the absence of other proof. Nor are there
sufficient admissions in the pleadings to sustain the
vital findings of fact in the decree. Every material
fact, *pro* and *con*, in the bill and the cross-bill neces-
sary to sustain a decree for either party is denied by
the answers in the record. The only information
vouchsafed us shedding any light whatever as to the
manner of procuring the decree to be entered by the
chancellor, is the statement on page 18 of appellant's
brief. We quote it:

"There was no formal hearing upon the bill and
cross-bill. It should be stated that a motion was made

by complainant in the original bill for an order opening the stairway during the pendency of the litigation. On affidavits filed and upon the presentation of that motion, the court intimated what his finding might be, as it seemed to be a question that would finally have to be determined before the higher courts, whereupon a draft of a decree was prepared by counsel for the city, which was not satisfactory to counsel for 'The Fair,' when a draft of a decree was prepared by counsel for 'The Fair,' and upon conference between counsel, this draft was modified to some extent and then presented to the judge by both parties, and by the judge signed. It should be stated here that the other part of the decree was in accordance with the announcement of the court. While the decree recites evidence was heard, as a matter of fact no evidence was heard, it being the intention to embody in the findings everything that could be proved by the parties.''

There is no motion in the record for an order allowing the opening in the stairway to remain during the pendency of the litigation, nor affidavits of any kind supporting or in opposition to such alleged motion, and the record is equally silent as to any views which the learned chancellor may have had, if any, either on the law or facts as applied to such a motion if made, or upon the questions involved in the litigation. The record furthermore is as uncommunicative as to the facts recited in the decree resting upon any announcement of the chancellor, as it is in other respects in matters alleged to have transpired before him.

The record, with the assignment of errors thereon, in the condition in which we find it, presents no question calling for our review. The only questions for us to determine are whether the decree is so erroneous in finding no support in the record that it should therefore be reversed, or treating it as a decree entered by consent of the parties and consequently binding upon them, that it should therefore be affirmed.

After appellant's counsel failed to concur in the draft of a decree prepared and presented to them by counsel for the city, they drew a new draft and went into conference with the counsel for the city; thereupon such draft *"was modified to some extent and then presented to the judge by both parties and by the judge signed."* This language, with nothing in the record in contradiction, is susceptible of but one construction, viz.: that the counsel for the respective parties agreed upon the terms of the decree and consented to its entry by the chancellor. The decree was presented by both of the parties to the court, and without anything more than their joint request being made, without proof of any sort, and without argument, it was entered. The manner of procedure, holding in view the record, stamps the decree so entered as a decree entered by the consent of the parties. It is a consent decree. A decree thus obtained cannot be said to be a judicial sentence, but the solemn and binding agreement of the parties. Such a decree is not reviewable. Winchester v. Winchester, 121 Mass. 127. As early as Armstrong v. Cooper, 11 Ill. 540, it was declared as matter of law that a decree by consent could not be appealed from, nor error assigned upon it. The court went to the extreme of holding that no rehearing could be had in a cause upon a decree so entered, and that such decree could not even be disturbed by bill of review—citing 1 Barber Ch. Pr., 373. This case is important in its bearing upon the decree in this record. It holds that while a decree entered by agreement or consent should more properly so recite, yet there is no rule making such recitation indispensable, for that while between the parties to the record nothing can be received to contradict the decree, yet there, as here, what was interpolated to support the fact of consent was not to be regarded as *dehors* the decree, but consistent with it. The statements in appellant's brief that no hearing was had, proof offered or evidence heard, are consistent with

the record and the decree found in it. In Knobloch v. Mueller, 123 Ill. 554, the court say: "Decrees so entered by consent cannot be reversed, set aside or impeached by bill of review except for fraud, unless it be shown that the consent was not in fact given, or something was inserted as by consent that was not consented to."

Nothing embraced within the exception is here apparent. The decree was agreed to in conference by the counsel for the respective parties and in virtue of their agreement and with their consent, and without any other action the chancellor, in virtue and faith of such surface appearances, ordered the decree to be entered.

In Krieger v. Krieger, 221 Ill. 479, the court say: "Parties who are competent to contract may agree to the rendition of a decree in respect to any rights which may be the subject of litigation. Such a decree is not in a strict legal sense a judicial sentence, but it is in the nature of a solemn contract, 5 Ency. of Plea. & Prac., 961, and it cannot be appealed from, nor can error be assigned upon it, for the reason that if there be error in it, the error is that of the parties and not of the court. The decree not being the judgment of the court, a rehearing cannot be allowed, and it cannot be set aside upon review for errors of law apparent on its face, or be impeached by such bill on account of additional evidence. It can only be impeached by an original bill in the nature of a bill of review." Cox v. Lynn, 138 Ill. 195; First Nat'l Bank v. Illinois Steel Co., 174 Ill. 140.

In the Krieger case, *supra*, while the court upheld the Circuit Court in vacating a decree entered by consent at the term in which it was entered, such ruling was based upon a cause coming within the exception to the rule stated in the decisions, viz.: the decree was procured by fraud. It also rested upon another fact and firm legal principle that during the term at which a decree is entered by operation of

law it remains in the breast of the court and subject during that term to its control, and may during such time be vacated or amended on either the motion of the parties or in the exercise of the discretion of the court, as justice and right may require. Stahl v. Webster, 11 Ill. 511; Smith v. Vanderburg, 46 *id.* 44; Edwards v. Irons, 73 *id.* 583; Shanahan v. Stevens, 139 *id.* 428.

"There can be no error in a decree by consent. *Consensus tollit errorem!* There can be no injustice in a decree by consent. *Volenti non fit injuria.*" Lord Nottingham in Webb v. Webb, 3 Swanst., 658.

Upon the same principle any particular provision or portion of a decree entered by consent or agreement of a party cannot be by such party assigned for error.

In Franck v. Bruck, 4 Ill. App. 627, the parties consenting waived the statutory right to redeem in a foreclosure decree, and on seeking a review, assigning error in the decree as contrary to the statute, it was held the consent was a bar to review, and the writ of error sued out seeking such a review was unavailing.

Beach in his work on Equity Practice, vol. 2, sec. 795, states as a fundamental principle that decrees or judgments entered by consent are binding and conclusive, and not the subject of review or rehearing, modification or variation in any essential part, except for fraud. French v. Shotwell, 5 Johns Ch. 555; Finley v. Bk. of U. S., 11 Wheat. 304; Atkinson v. Manks, 1 Cowen, 691; Leitch v. Cumpston, 4 Paige, 476; Morris v. Peyton, 29 W. Va. 201.

Had the parties here desired a review of the decree of the chancellor in an appellate tribunal, they should have either tried the cause in the usual way, or, if they could agree upon the facts, without resorting to proof, and were desirous of avoiding the labor involved in so doing, they should have embodied such facts, about which they were in accord, in an agreed

statement of them in writing, leaving the chancellor to apply the law to them. After proper presentation, the court might grant such relief by decree as the facts, under the law, in his judgment seemed appropriate. On a decree so procured, with a foundation of facts to sustain it, a dissatisfied party might prosecute an appeal and obtain our review of the record. This was not done. A new and unprecedented course was adopted, resulting, as we think, from a misconception by counsel of the legal effect of the mode adopted, and which we infer from the arguments of counsel, influenced them in consenting to a final decree which they inadvisedly seem to have assumed was reviewable. If such be the fact, counsel have misconceived the effect of their actions. The decree is plainly the result of their agreement and consent and rests upon naught else. The decree, thus promulgated, is binding upon the parties, and, in the judgment of this court, is not a judicial finding, but the solemn compact of the parties and not reviewable. The decree of the Superior Court is therefore affirmed.

*Affirmed.*