# CHARLESTON.

## SEILER *v.* UNION MANUFACTURING CO.

Submitted June 12, 1901.   Decided November 23, 1901.

1. FORMER DECISIONS—*Reaffirmed.*

    Syllabus 2 and 4 *Manion* v. *Fahy,* 11 W. Va. 482, and syllabus 1, *Morris* v. *Peyton,* 29 W. Va. 201, reaffirmed.   (p. 217).

2. CONSENT DECREES—*Correction.*

    The parties to a suit can adjust matters and their rights between themselves and have a decree entered by consent of all parties without regard to the state of the pleadings or evidence in the cause, and the court at a subsequent term has no power to set aside, alter, or modify it without the consent of the parties except only to correct a clerical error.   (p. 218).

3. CONSENT DECREE—*Construction.*

    The court in its decrees carrying into execution a consent decree may construe the same when necessary but it cannot

set aside such consent decree and enter one totally different therefrom under the guise of construing it. (p. 218).

4. Insolvent Corporation—*Receiver—Lien Creditor.*
   The stockholders and creditors of an insolvent corporation other than a creditor by trust lien covering all the real estate of said corporation procured the appointment of a special receiver of the property of said corporation. *Held*: that the said trust lien will be protected against indebtedness created by said special receiver. (p. 221).

Appeal from Circuit Court, Tucker County.

Bill by John R. Seiler and others against the Union Manufacturing Company and others. Decree for complainants, and defendants appeal.

*Reversed.*

Wagoner & Heironomus and C. Wood Daily, for appellants.

A. Jay Valentine, for appellees.

McWhorter, Judge:

On the 30th day of January, 1897, J. R. Seiler and others, officers and stockholders of the Union Manufacturing Company, a corporation doing business at Parsons, Tucker County, presented their bill to the circuit court of said county, praying for the appointment of a special receiver of the property and business of the said defendant company that such business might be carried on and its debts paid and the rights and interests of the parties in interest protected; that on the presentation of the said bill an order was made appointing William G. Conley special receiver and remanding the bill to rules for process. The most valuable part of the assets of said Union Manufacturing Company consisted of real estate upon which a deed of trust had before that time been duly executed and recorded to secure to the Monumental Savings and Loan Association the payment of fifteen hundred dollars loaned upon said property according to the terms and conditions of the loan. Said receiver was authorized to carry on the business and operate the mill plant and to have all power that might be necessary or proper for him to exercise in the prudent and successful continuance of said business including the right to employ such agents, assistants, and

employes as he might find necessary in the discharge of said business and from the collection to be made by him from time to time of money then due said company or thereafter to become due in the course of the business should pay first, the current expenses of operating the business as they become due and any surplus in his hands after paying current expenses he was to retain the same and continue to do likewise each month until the March term of the court, 1897, when he should make a full report of all the business transacted by him and the surplus so remaining in his hands for further decree. He made reports from time to time when it was ascertained that the receiver was contracting a large indebtedness and not paying off the indebtedness which existed at the time of his appointment.

On the 14th of December, 1897, the Monumental Savings and Loan Association filed its answer and cross-bill denying that it joined in the request for a special receiver yet acquiesced in the belief at the time it was done that a special receiver should be appointed but with the express understanding that the monthly dues each month becoming due under its contract should be paid by the receiver and alleging that the business of the company was being destroyed by the receiver and praying for his discharge, which motion to discharge the receiver was overruled by the court.

On the 13th of March, 1899, the cause was referred to W. H. Kelly, commissioner, to ascertain and report the real estate owned by the defendant, The Union Manufacturing Company, and the real and personal estate owned by it on the 30th of January, 1897, the date of the appointment of the receiver, what property passed into the hands of the said receiver, and what disposition he had made of it and to ascertain and report the liens and priorities on said real and personal property, distinguishing between those existing at the time of receiver's appointment and those contracted by receiver, and to settle the receiver's account

On the 23rd of June, 1899, a consent decree was entered directing the sale of the property of said manufacturing company expressly providing that only the equity of redemption should be sold of that property upon which the said building and loan association had its lien, such sale to be made by the special receiver; and provided further that by the written consent of the said loan association filed with the clerk of the court or with the

receiver at any time prior to the time he should advertise said property for sale under the decree the said receiver should sell the entire title to all said property including that covered by said deed of trust aforesaid.   Under the decree the receiver sold the personal property and also sold the equity of redemption in that covered by the said lien but which equity of redemption only brought five dollars and was purchased by the said building and loan association.   The report of said sales was made when the court refused to confirm the sale of the equity of redemption and at the November term, 1899, of said court entered a decree modifying and in effect setting aside the consent decree and providing for the sale of the property absolutely free from the said lien of the loan association and for the payment out of the proceeds first of the costs and debts contracted by the receiver, which was ascertained by the commissioner's report would probably be more than sufficient to consume all the assets of the said Union Manufacturing Co.

There were various exceptions made to said report of commissioner Kelly. *J. R. Seiler excepted, "First:   Because said commissioner reports that the debts contracted by special receiver Conley should rank with open accounts against said company 'and take last place so far as personal property of said company is concerned,' and that the Monumental Building and Loan Association be first paid out of a sale of the real estate.   Second: Because said commissioner fails to report as the first charge or lien on all the property of the Union Manufacturing Company, is the debts contracted by special receiver Wm. G. Conley since his appointment as such special receiver."

William G. Conley, special receiver, filed his exceptions as follows:   "First:   To the commissioner's report in this cause for the reason that the commissioner reports that the deed of trust lien to the Monumental Building and Loan Association, defendant, is a first lien against all of the real estate of the Union Manufacturing Company, and should be first to be paid out of the proceeds of the sale thereof, and at the same time shows that the receiver is indebted the amount of one thousand four hundred and ninety-five dollars and eleven cents at the date of the report, which is the receiver's debt and is the first lien against all the property of the Union Manufacturing Company, and should be first to be paid out of the proceeds of the sale thereof and should

have been so reported, not only because this is proper from a legal standpoint, but because the said building and loan association joined with the stockholders and other of the creditors of the Union Manufacturing Company to place it in the hands of a receiver, as shown by the order appointing the receiver, entered at a special term of this Court on January 30, 1897. *Second*: Because the accounts due the receiver amount to one thousand and sixty-four dollars and fifty-five cents, out of which the allowance to the special receiver for his services has had nothing except fifty dollars, about two-thirds of which are claims due the receiver and by insolvent parties and which are uncollectable. And the other assets, as shown by the report of sale, which will be filed herewith, will not be near a sufficient amount to pay the receiver's indebtedness, therefore the receiver's indebtedness should be decreed and held to be a lien against all of the property assets and claims due said company's receiver to be a first lien there against and to be first paid out of the proceeds of the sale of its property. *Third*: That the costs of this suit as well should also be paid before the deed of trust debt of the Monumental Building and Loan Association, and in this behalf, as against the report of the commissioner, which states that the debt to the Monumental Building and Loan Association should be first paid before any other claim, and the receiver excepts."

And the Monumental Savings and Loan Association also filed its exception: "*First*: For that the commissioner reports vaguely in that he reports 'that The Monumental Savings and Loan Association, in case of any sale of the real estate of The Union Manufacturing Company, such not being made subject to The Monumental Savings and Loan Association's deed of trust, the building and loan should then be first paid out of the proceeds of said sale.' The reason for said exception is that the Supreme Court has ruled in the case of *L. Wise's Sons* v. *R. J. Taylor et al.*, that said sale can only be made subject to the building and loan debt, or in other words, that the equity of redemption only can be sold. In that decision the court said: 'And the court has no power to change the terms and conditions of the deed of trust as to the maturity of the loan thereby secured.' *Second*: For that the commissioner reports that 'premiums, dues and fines paid by any other than the Union Manufacturing Company, said

parties should be subrogated to the rights of the building and loan association and should be of equal priority with the building and loan deed of trust debt so far as the real estate is concerned,' for the reason that this would be an impossible proposition when the said real estate can only be sold subject to the Monumental Savings and Loan Association deed of trust. *Third*: The commissioner's report provides that the debts of the receiver shall first be paid out of the proceeds of the sale of property of the said Union Manufacturing Company. Now, we desire to except to this for the same reason, viz., that the deed of trust executed to the Monumental Savings and Loan Association can not be interfered with because the equity of redemption only can be sold. *Fourth*: We desire to except to said report because the commissioner failed to report whether or not Wagoner & Heironimus, as attorneys for the said Monumental Savings and Loan Association, were entitled to an attorney's fee of fifty ($50.00) dollars, which they filed with the said commissioner."

The court sustained the second exception of the loan 'association and overruled the first, third and fourth of said exceptions, and sustained the two exceptions of J. R. Seiler and the exceptions of William G. Conley, special receiver.

The Monumental Savings and Loan Association appealed from said decree of November, 1899, and assigned the following errors: "*First*: In appointing a receiver at the January term, 1897, and especially without notice. *Second*: In authorizing the receiver to carry on the business. *Third*: In, from time to time, approving the receiver's reports and authorizing the continuation of the business by him. *Fourth*: In sustaining exceptions Nos. 1 and 2 of W. G. Conley, special receiver, and excception of J. R. Seiler to commissioner Kelly's report at the November term, 1899. *Fifth*: In overruling petitioner's exceptions Nos. 1, 3 and 4 to said report. *Sixth*: In modifying and setting aside at the November term, 1899, the consent decree entered at the June term of the same year."

It is claimed that the court erred in appointing a receiver on the filing of the bill praying therefor, because of the provision in section 28, chapter 133, Code: "No such receiver shall be appointed of any real estate, or of the rents, issues and profits thereof until reasonable notice of the application therefor has been given to the owner or tenant thereof." It is true there was no

service of process at the time upon the Union Manufacturing Company as a corporation, but the president and all the officers upon whom only, the service of notice could have been had, were individually plaintiffs in the suit and quite all the stockholders were parties to the suit asking the apppointment of the receiver, so that notice to the owner could not possibly have had any further effect. The course taken by J. R. Seiler, the president of the Union Manufacturing Company, is a little singular to say the least of it. With the bill and application for a receiver his affidavit was filed in support of said motion and which was sworn to the day before the application was filed and the receiver appointed; in giving his testimony Seiler says he did not know that J. H. Ryder, the general manager of the Union Manufacturing Company, had used deponent's name in the suit to get a receiver appointed, that he did concur in the appointment of William G. Conley as receiver but "did not know who Mr. Conley intended to put in as general manager. I did not suppose that he would put the same man back to take us out of the hole that put us in it," referring to J. H. Ryder who had been general manager before the receiver was appointed and who was kept in the same position by the receiver. Seiler further testified that something like two thousand dollars of Union Manufacturing Company's checks had been used by said Ryder to pay his own individual debts; that in the building of the house on the hill said to be owned by defendant Ruth N. Ryder, J. H. Ryder had paid the principal part of the labor with Union Manufacturing Company's checks, and mentions other large transactions in which Ryder had improperly used the funds of the said company. Said Seiler also, together with plaintiff D. S. Turner, also a large stockholder in the Union Manufacturing Company, filed before commissioner Kelly what is termed "Rejoinder of plaintiffs," which paper is in part as follows: "The plaintiff stockholders, J. R. Seiler and D. S. Turner and as many of the other stockholders who are not implicated in the attempted looting of said company who will join herein" for the purpose of resisting certain claims set up before the commissioner because said claims in part were the individual transactions of said J. H. Ryder and not the business of the Union Manufacturing Company, and the rest of said accounts and notes were settled out of the funds of said company before it went into the hands of the receiver and that no part of said

money ever belonged to J. H. Ryder, Luther Stafford or Ruth N. Ryder; that no part of said accounts were liabilities of said defendant company; that they were paid for from the working capital of said company. The reports show that a very large proportion of the expenditures of the receiver was paid to the several stockholders as individuals. Some of the accounts so complained of were disallowed by the commissioner.

The third assignment is that the court erred in from time to time approving the receiver's reports and authorizing the continuation of the business by him. I think it true that a careful analysis of the receiver's reports one and two, especially the latter, would disclose the fact that the business was all the time being run at a loss and the receiver was making debts which he was not authorized to make, but the second report showed on its face net earnings to the amount of one thousand and thirty dollars and five cents and was permitted to be filed without exception, and the rosy, optimistic expressions of the receiver in the report of the condition of the company's affairs allowed to go unquestioned by way of exception. The defendant loan association did, in its answer filed at the time of the filing of the receiver's second report, aver what the true condition of the company's affairs was, when it moved the discharge of the receiver.

As to the fourth assignment of error in sustaining the exceptions of receiver Conley one and two and of J. R. Seiler to the commissioner's report, said exceptions are all of about the same import, the commissioner having reported that the lien of the Savings and Loan Association should be first paid to which holding these exceptions go. And in the same connection may properly be treated the fifth and sixth assignments, the last touching the setting aside of the consent decree of June 23, 1899, by the court by its decree of November, 1899.

The appellees contend that the receiver's debt contracted while carrying on the business constituted the first lien upon all the property of the defendant company, and cite 20 Am. & E. E. L. 183 (1st Ed.) based on *Hopfensack* v. *Hopfensack,* 61 How. Pr. (N. Y.) 508, where it is held, that the court may award compensation to the receiver out of the fund which he holds even though the title to that fund be found to have been from the first and to be then in the defendant. The authority cited is dealing simply with compensation to the receiver and not with debts created by

him without authority and beyond the powers given him by the court appointing him. It will be observed that in case at bar the court provides in its decree of appointment, "He shall have the power that may be necessary or proper for him to exercise in the prudent and successful conduct of such business, including the right to employ such agents, assistants and employes as he may find necessary in the discharge of said business," gives him authority to collect and receipt for all moneys due the company or to become due under his management of the business and providing that from such collections said receiver should pay first the current expenses of operating the business and report any surplus that might remain, after paying such expenses, to the court for further decree, but the receiver was not authorized by the said decree to create any indebtedness. The decree entered June 23, 1899, was entered by consent of all the parties to the suit. At the November term, following, "the court upon inspection of the decree of sale entered in this cause on June 23, 1899, wherein it directed that the real estate of the Union Manufacturing Company should 'only be of the equity of redemption as is covered by the deed of trust in favor of the Monumental Savings and Loan Association of Baltimore city,' but should have gone further and decreed that if the real estate did not bring a sufficient amount, over and above the building and loan debt to pay the special receiver's debts, after first applying what money is in his hands, or might come into his hands, then to sell the real estate free of the equity of redemption of said building and loan association; it appearing to the court that said building and loan association joined with other of the creditors of the Union Manufacturing Company and its stockholders to have said Union Manufacturing Company placed in the hands of a special receiver, and it now appearing to the court that said real estate may not sell for a sufficient amount, over and above said equity of redemption to pay the special receiver's debts, after first applying thereto the proceeds of the sale of the personal property, money in his hands and what may come into his hands from the collection of solvent claims due said special receiver and said Union Manufacturing Company." The court then ascertained that the debts made by said special receiver amounted to more than the sum of sixteen hundred and sixty-four dollars and that the proceeds of the personal property assets, moneys, etc., would

not pay such indebtedness, proceeded to decree the sale of the property free from the lien of said savings and loan association and providing for the payment of said indebtedness of the special receiver together with compensation to said receiver and to his attorney, A. M. Cunningham, and the balance to be paid to the said loan association and the other creditors. It is contended by appellant that the court had no right to set aside a consent decree which settles the rights of appellant to have its claim satisfied as the first lien of said property. In *Manion* v. *Fahy,* 11 W. Va. 482, (syl. pt. 4), it is held: "After the termination of the term, at which a consent decree was entered, it can never be set aside, except by consent, by any proceedings in the cause, though it had been entered by mistake, or by the fraud of one of the parties."

This is also entered as syllabus 2 in the case of *Rose* v. *Brown,* 17 W. Va. 649, and in *Morris* v. *Peyton,* 29 W. Va. 201, (syl. pt. 1), it is held, "After the end of the term, at which a consent decree is entered, it cannot be set aside, modified or altered without the consent of the parties except only to correct a clerical error." It is not claimed by the appellees that the alteration in the said decree was a clerical error, there was no motion made to correct such decree on any such grounds, and there does not appear in the decree of November that any such error existed. The court simply holds that the decree should have gone further than the parties consenting thereto had it go, and the court undertakes to enlarge that consent. The receiver as well as the principal creditors holding the debts created by him were parties to the suit at the time of the entering of the consent decree. Appellees say that it was a consent decree entered without passing upon the rights of the parties and for the purpose of ascertaining whether or not the property would sell subject to the debt of the appellant for sufficient to pay the costs and expenses of the receiver and other debts without first paying off the debt of appellant. It does not so appear from the decree that it was to be a trial or test sale, on the other hand it, by consent of all the parties, provided that by the consent in writing of the said Savings and Loan Association filed with the clerk of the court or with the special receiver at any time prior to the time the receiver should advertise, the receiver should sell the entire title to all of said property including that covered by the said loan association deed of trust.

This clearly shows that at the time of making the consent decree all parties recognized the rights of the said loan association in the priority of its trust lien.

As said by JUDGE GREEN in *Morris* v. *Peyton, supra,* at page 212: "As such a decree is not the judgment of the court upon the merits of the case, but the act of the parties to the suit, it is obvious, that it cannot be modified, set aside, or annulled by any order in the cause made by the court below without the consent of all the parties to the cause, unless set aside during the same term of the court, which would leave matters in the same condition as if it had never been entered. Nor can it be appealed from, nor modified by this Court, unless perhaps, it should be so entirely foreign to the matters in controversy in the cause, that for this or some other reason the court below had no jurisdiction or authority to enter such decree by consent or otherwise." Citing *Manion* v. *Fahy,* 11 W. Va. 482, (syl. pt. 2). It is nowhere alleged or contended, that there was any mistake, clerical error, or fraud on the part of any one in the procurement of said consent decree and there is no ambiguity in the language used to require a construction by the Court, the presumption is that, at the time of the consent decree, receiver believed that his reports of the favorable condition of the affairs of the defendant company were true, and that it was more than paying expenses. The parties to a suit can adjust matters and their rights between themselves and have a decree entered by consent of all parties without regard to the state of the pleadings or evidence, and the court at a subsequent term has no power to change or modify it. It is insisted by appellees that the court, in carrying into execution a consent decree, must necessarily construe such consent decree and has a right to construe the same and cites *Morris* v. *Peyton, supra,* in support of their proposition. This is correct in so far as it is necessary to carry into execution such consent decree, but we find no authority in said case or elsewhere authorizing the court to set aside the decree and entering one in lieu thereof totally different under the guise of construing the same. In the case at bar the court has detained that the parties in making their consent should have gone further and made an entirely different decree, and undertakes to make it for them. By the consent of the parties the rights of the savings and loan association were recognized and the real estate was decreed to be sold, subject to its

claim. This was the final ascertainment of its rights by consent of all the parties to the suit and could not be changed by any subsequent order of the court without like consent, and the sale made by the receiver of the equity of redemption under the consent decree should have been confirmed in the absence of a sufficient reason for directing a resale. In section 7, page 24, Smith on Receiverships, it is said: "And while the custody of the property, or fund, may be transferred, all liens upon or rights therein remain unchanged, and, if the property be sold prior to the final determination of the respective rights therein the status of the parties to the proceeds is preserved and protected. This is accomplished by suitable and proper provisions in the decree or judgment. All liens are protected and preserved, but the right to enforce such liens is suspended pending the receivership." And *Id,* s. 44, page 125, it is said: "The receivership is, in its nature, an equitable execution operating, in its effects, from the date of granting. Besides the receiver's possession does not destroy any existing right but, on the contrary, protects and preserves them. * * * * nor does it disturb any lien thereon." *Lorch* v. *Aultman,* 75 Ind. 162; *Favorite, Receiver,* v. *Deardorf,* 84 Ind. 555; *Becker* v. *Torrence,* 31 N. Y. 631; *In re North American Gutta-percha Co.* 17 How. Pr. 549; *VonRoun* v. *Superior Courts,* 58 Cal. 358; *Chase's Case,* 1 Bland's Chancery, 206.

A telegram from the secretary of the Monumental Savings and Loan Association to W. G. Conley, dated January 29, 1897, advising him to "take such action as you deem best for our interest in Union Manufacturing Company," also a letter dated February 2, 1897, from said secretary to said Conley are brought up on *certiorari,* doubtless for the purpose of sustaining the receiver, Conley, in his course in the matter. This letter is in part as follows: "I wired you from Charleston to take such action as you deem best for our interest in the Union Manufacturing Company case. This was done in response to a letter received from Mr. Ryder, asking that we give authority for his attorney to join in the application that you be made receiver for the property. I was in Charleston at the time, looking after some matters before the Legislature affecting the interest of the association doing business in that State, and did not know the full purport of Mr. Ryder's letter as the matter was telegraphed to me in brief from the office. As I had previously had some indirect conversation

with you in regard to this matter, intimating what our action in the premises might be if the necessity should arise, I presume that the telegram was sufficiently explicit to guide you in your action, and should be pleased to hear from you in regard to this matter, as I am anxious to know what has been done by the court." Mr. Conley was one of the trustees in the deed of trust securing the said savings and loan association, Ryder, the general manager of the Union Manufacturing Company, whose mismanagement had rendered the concern insolvent, was evidently trying to induce the savings and loan association to assist him in extricating himself from his dilemma at the expense of its debt which was secured, and the association relying upon said Conley, its trustee or attorney, wrote him as stated, but it seems that he failed to look after the interests of the association and to faithfully represent it. We find the attorney for the plaintiffs, whose interests were antagonistic to the association, accepting service of process for the association, whose action it promptly repudiated as soon as it found it necessary to appear and make defense; this it could legally do. *Blowpipe Co.* v. *Spencer,* 46 W. Va. 590, and which was done on filing its answer denying its rights to accept service and demanding the discharge of the receiver. The consent decree settled the matter and is final, binding all the parties.

The appellant complains of the decree of November, 1899, because it fails to decree any amount to the savings and loan association. This is evidently an oversight in entering the decree, because the debt due the loan association is recognized all through the record and reported by the commissioner and is also recognized in said November decree, and it provided that any balance shall be paid to the said association and other creditors, yet this is an error or omission that could have been corrected on motion in the circuit court, and, as the cause will have to be remanded for further proceedings, it can there be corrected in that respect. It is also contended by the appellants that the bill filed in the cause did not make a proper case for the appointment of the receiver. The bill showed on its face and was supported by affidavits that the property could be made to earn at least the sum of three hundred dollars per month and thereby pay the debts and save the property to the stockholders, while all the plaintiffs and the stockholders, defendants, were favoring the appointment of a receiver, and the answer of the said loan asso-

ciation made in November, 1897, ten months after the appointment, admits that it acquiesced in the belief that at the time it was done, a special receiver should be appointed but had nothing to do with procuring the appointment, had not then been served with process, and on its first appearance alleged the bad condition of the affairs of the company, and prayed for the discharge of the receiver.

At the time of the appointment of the receiver the appellant had no further interest in the conduct or management of the property than to have provision made for the monthly payments to be made to it under its contract of loan to said manufacturing company and its interests were protected whenever provisions of any kind were made which would do this, the principal of its loan being steadily reduced by such monthly payments and still secured by deed of trust on the realty, fixtures, etc. And its debt was probably well secured by its trust deed if it had proceeded to enforce its lien as it then had a right to do under the terms of its contract, the manufacturing company being eleven months in default. The stockholders and creditors, bringing the suit and asking for a receiver, assumed the risk thereof and have no right to deprive appellant of the benefit of its lien because of the loss that has come upon them by reason of the bad management or mismanagement of the property which they induced the court to take charge of to help them out. Whether it was an honest effort to pay off all the indebtedness of the concern and leave the loan association well secured in its debt, or whether it was a scheme to draw the interests of the association into *hotchpot* and be made to contribute its secured debt or a large part thereof to lighten their losses or to the payment of large indebtedness created by the mismanagement of what was virtually its property is not clear. The loan association should not be required, under the circumstances of this case, to forfeit its lien to pay the unauthorized indebtedness of the receiver.

The decree of November, 1899, will be reversed and the cause remanded with directions that if it shall be made to appear for good reasons, and other than those given in the report of receiver Conley in his report of sale of the equity of redemption in the property covered by the trust lien of the Monumental Savings and Loan Association, why the sale made by said receiver should be set aside, that the same be set aside and a resale of the

equity of redemption in the property ordered, otherwise that said sale should be confirmed.

*Reversed.*