JOHN MCARTHUR, APPELLANT, V. FRANK C. THOMPSON, APPELLEE.

299 N. W. 519

FILED AUGUST 1, 1941.   No. 31165.

*Walker & McArthur*, for appellant.

*Max Kier, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and YEAGER, JJ.

PAINE, J.

In an equity suit for the dissolution of a partnership, an accounting of partnership transactions, and for the sale by receiver of the three restaurants owned by the partnership, the plaintiff and defendant by agreement arrived at a settlement, and the court entered a supplemental decree in accordance therewith.

More than two months after the entry of this final decree, upon motion of the defendant alone, and over the objections of the plaintiff, the trial court entered an order amending such supplemental decree, which had been entered by consent of all parties. Plaintiff's motion for a new trial being overruled, he appeals from the order of the court modifying, amending, and changing the supplemental decree over plaintiff's objection.

It will be necessary, in order to have a clear understanding of the matter in dispute, that we present very briefly the facts leading up to the matter which is now contested.

John McArthur, plaintiff, and Frank C. Thompson, defendant, were equal partners in the ownership of three prosperous restaurants in Lincoln, each called Hotel D'Hamburger, occupying three separate locations. They had a sharp disagreement, in which there were claims made against each other, and charges of shortages, and of ex-

cessive withdrawals from the assets of the partnership, and suit was filed for an accounting, and finally a receiver was appointed, and a long and bitter trial resulted.

It is set out in the findings and decree of the court, dated April 10, 1940, that there were many disputes and differences between the partners, one being as to the form and manner of bookkeeping, and the court finds that McArthur's drawings from the firm are $3,483.89 in cash and a shortage of $196.38, or a total of $3,680.27, which should be charged against McArthur.

McArthur had agreed to pay the defendant $6,000 for a one-half interest in the business, of which he paid $3,000 in cash, and gave a demand note for the balance of $3,000, with interest at 4 per cent., which with interest makes a total charge against McArthur of $5,189.77, during the period of McArthur's operation, from September 9, 1937, to March 31, 1938. From April 1, 1938, to May 19, 1938, neither partner was in sole charge.

It was found by the court that from May 19, 1938, to August 28, 1939, was Thompson's period of operation, and that the total drawings of Thompson were $4,199.97, and one-half of the unidentified drawings of $433.70, and a cash shortage of $1,738.81 charged against Thompson, showing a total amount charged to Thompson of $6,372.48. Adding this to unsigned tapes of sales not included of $1,-868.11, and advancements of $1,378.90, plus one-half of the unidentified drawings of $437.55, makes the total charged to Thompson's account of $10,057.04. Deducting the total amount with interest charged to McArthur, of $5,977.32, leaves a difference of $4,079.72, of which Thompson owes McArthur one-half, or $2,039.86.

The court further found the bill of $3,000 of John C. Shepard for making the audit is far too high, and allows him but $1,700, and allows the receiver, H. D. Lunsford, $900, and Frank Barrett for services to the receiver, $300, and directs the receiver to sell all partnership property at public auction within 30 days and report his proceeds into court.

This is a very inadequate summary of the decree of April 10, 1940, which is more than ten pages in length.

On April 13, 1940, there was filed an application by the plaintiff and defendant, setting out that they had agreed upon terms of settlement, and asking the court to modify the decree of April 10, 1940, and to order the receiver to deliver to the plaintiff all of the assets in his hands, and that no judicial sale be made, and that the receiver and his bondsmen be discharged, and on said 13th day of April, 1940, a supplemental decree was entered, modifying the decree of April 10, the same being a consent decree, entered by agreement of the parties, and finding that the defendant has sold his entire interest in the three Hotel D'Hamburger restaurants to plaintiff, who has paid the defendant the agreed consideration, and the receiver is to deliver to plaintiff all partnership assets, this supplemental decree concluding all matters between the parties.

Thereafter it was discovered that the Beatrice Creamery Company owed the partnership the sum of $346.24, the same being for rebates on ice cream not paid to the receiver. On June 20, 1940, the defendant filed a motion in the district court, asking that the court amend the final supplemental decree entered April 13, 1940, to provide that the defendant shall now receive $173.12, being one-half of the rebates due from the Beatrice Creamery Company.

The defendant attached to said motion, as exhibit A, a stipulation, which was the full agreement entered into by the parties on April 11, 1940, which resulted in the consent decree of April 13, 1940, being entered.

It appears there was one paragraph therein which read as follows: "It is further stipulated and agreed that if there are any rebates, refunds, cash discounts, or other moneys owing from any parties to the partnership not having been previously obtained by the receiver, one-half of said sum, if any, shall be paid to the defendant Frank C. Thompson."

No mention whatever had been made of this written agreement in the final supplemental decree of April 13,

1940, and it was in no way made a part of the consent decree, and exhibit A, containing it, was not attached to said final decree, which was entered upon the joint motion of plaintiff and defendant.

On June 21, 1940, the plaintiff filed objections to the defendant's motion, and charging that the stipulation set out in the defendant's motion just filed is not a part of the records in this case, and the relief based thereon cannot be obtained by motion; that the stipulation, exhibit A, annexed to defendant's motion, was secured by fraud of the defendant, as appears from affidavits offered in support hereof; that the issues with respect to said fraud are the subject-matter of a separate lawsuit presently to be filed, as shown by affidavits tendered herewith; that the court is without jurisdiction to determine the rights of plaintiff and defendant to the funds now in the hands of a third party and not a party to this action.

It is further charged that the motion of the defendant represents an attempt by the defendant to take advantage, by summary process, of a fraud perpetrated by him upon the plaintiff, upon the receiver appointed by the court, and upon the accountant appointed by the court to audit the partnership affairs, and upon the court itself, as shown by affidavits of said receiver, accountant, and plaintiff, wherefore plaintiff prays that the motion of the defendant be overruled at defendant's costs.

In support of this motion, there are attached many affidavits, the one of George A. Kurk showing that prior to May 12, 1938, no rebate was allowed to Hotel D'Hamburger for ice cream, but that on May 12, 1938, Frank C. Thompson agreed with affiant that he would purchase all of the ice cream from the Beatrice Creamery Company; that the price to be paid should be $1.10 a gallon, and that 20 cents would be refunded on each gallon so purchased, and pursuant to such oral agreement there was paid to Frank C. Thompson ice cream rebates listed in the affidavit by months, and amounting to the following sums: For the months of May to December, 1938, $224.65; for January

to July, 1939, the sum of $179.60; for the months of September, October and November, 1939, the sum of $123.60; for the months of March to May, 1940, the sum of $144.25, making a total sum of $672.10.

Affiant Kurk further testifies that, when he tendered the check for ice cream discount for August, 1939, to Frank C. Thompson, Thompson instructed him to hold it until further instructions from Thompson, and therefore the Beatrice Creamery Company did hold said ice cream discount, and did not pay the same to H. D. Lunsford, receiver of Hotel D'Hamburger; that the money in the hands of the Beatrice Creamery Company represents a part of the ice cream discount earned between August, 1939, and April, 1940.

H. D. Lunsford states in his affidavit that he was wholly unaware that any ice cream discount was payable from the Beatrice Creamery Company to said business, and that none was paid to him as receiver.

John C. Shepard, auditor, in his affidavit states that he carefully audited the books of Hotel D'Hamburger, and that nowhere in said books does it appear that any ice cream discount was being collected by the defendant, or had been paid by the Beatrice Creamery Company to the defendant, Thompson. He said that during his examination of the business he was informed by plaintiff that a discount on milk and cream was being paid by the Beatrice Creamery Company, although same was not anywhere shown in the defendant's records, and that he obtained information from said company and charged the same in his audit; that he called Frank C. Thompson, defendant, into his office and asked whether there were any other discounts than the milk and cream discounts payable on the partnership business, and that Frank C. Thompson told affiant that the milk and cream discount was the only discount of any kind ever earned or paid to the partnership, and affiant swears that he never knew of the ice cream discount paid by the Beatrice Creamery Company until several days after the entry of the supplemental decree.

The affidavit of John McArthur states that he is plaintiff, and that, for the purpose of buying out defendant's interests, he entered into negotiations with Coburn Campbell, who was at that time attorney for the defendant, and that said Coburn Campbell told him that he had asked his client, Frank C. Thompson, whether there were any other discounts or rebates aside from that on milk and cream, and that Frank C. Thompson said he did not know of any other discounts or rebates, and that, in reliance on said statements, affiant signed the stipulation attached to defendant's motion.

Affiant further says he agreed to pay, and did pay, to the defendant, Frank C. Thompson, $2,000 for the entire right, title and interest of Frank C. Thompson in said partnership business, under the belief that all of the money and assets of said partnership that came into defendant's hands during the period covered in this accounting had been discovered and taken into account, and in reliance on said belief made the settlement mentioned; that since said settlement he has learned that in May, 1938, before any difficulty developed between the partners, Frank C. Thompson had negotiated a secret agreement with the Beatrice Creamery Company, whereby said company agreed to pay to Frank C. Thompson a discount, or rebate, of 20 cents a gallon on all ice cream purchased from said Beatrice Creamery Company, and that between May, 1938, and August, 1939, the said Frank C. Thompson actually collected from the Beatrice Creamery Company on such ice cream rebates some $700, which he failed to record in the books, and concealed from the affiant, as well as from the defendant's own attorney.

Affiant further states that the Beatrice Creamery Company still holds rebates for the period between August 29, 1939, and April 13, 1940, in the sum of $346.24, which is payable to the partnership; that immediately upon learning these facts the plaintiff notified the Beatrice Creamery Company that he claimed all of the accumulated ice cream discounts of $346.24, because the defendant had collected

more than $700 for which he had failed to account; that the attorney for the Beatrice Creamery Company, T. S. Allen, informed affiant that the Beatrice Creamery Company would commence an interpleader action and tender the ice cream discount in its hands into court, and affiant attaches to his affidavit the duly verified petition which T. S. Allen proposes to file in the district court for Lancaster county as attorney for the Beatrice Creamery Company; that the affidavit of Coburn Campbell, former attorney for defendant, verifies the statements in the affidavit of plaintiff.

In opposition thereto appears the affidavit of Frank C. Thompson, defendant, in which he states that he has read the affidavits of George A. Kurk, H. D. Lunsford, John C. Shepard, and John McArthur filed herein, and states that the rebates paid to him by the Beatrice Creamery Company were placed in the funds of the partnership heretofore existing under the name of Hotel D'Hamburger, and none of those was diverted to the personal use or benefit of the affiant, and that all of said rebates were fully accounted for and included in the shortages charged to the defendant, and that at the time the stipulation was entered into it was known by both parties that there were additional rebates, and for that reason it was specifically provided in said stipulation of settlement that the plaintiff should receive one-half thereof.

In opposition to the affidavit of the defendant, Thompson, an additional affidavit is filed by John McArthur, plaintiff, in which he says that, when specific items of cash shortage were pointed out, Thompson admitted that each of said charges represented funds taken by him from the partnership, and nowhere recorded or accounted for in any of his records, and that there was no such thing as a partnership account; that he put a part of the partnership funds in his personal bank account; that the entries listed in the books which were introduced in evidence as bank deposits were not bank deposits at all, but merely a designation of sums which should have been deposited, and that said

Thompson further admitted on cross-examination that he took sums totaling $1,700 from the partnership business without making any kind of entry in any of his records.

Affiant objects to amending the supplemental decree to enable defendant to collect the proceeds of a fraud deliberately perpetrated, and the evidence in respect to which requires the examination of evidence and facts never before the court prior to the filing of defendant's motion; that affiant is anxious to have opportunity to bring into court the persons whose affidavits he has offered, and exhibits and records to substantiate his claim, and to have the opportunity to cross-examine parties furnishing affidavit for defendant.

On August 20, 1940, the trial judge entered his final order, saying that on June 22 and June 29, 1940, the matter came on for hearing upon the motion of the defendant, Frank C. Thompson, for an order amending the supplemental decree so as to provide that defendant Thompson is to receive one-half of the rebates held by the Beatrice Creamery Company. The court finds that the stipulation produced definitely refers to unknown rebates owed to the partnership, and there are rebates in the amount of $346.24 held by the Beatrice Creamery Company, and that, pursuant to said stipulation, one-half of said sum, or $173.12, was payable to Frank C. Thompson, and that the decree heretofore entered on April 13, 1940, should be modified so as to contain the provisions of this stipulation. It is ordered that the decree heretofore entered be modified, and that Frank C. Thompson be adjudged the owner of, and entitled to receive, the sum of $173.12 from the Beatrice Creamery Company.

Motion for a new trial was filed, setting up that the court had no jurisdiction over the subject-matter, had no jurisdiction over the Beatrice Creamery Company, the holder of the fund in dispute, because the supplemental decree of April 13, 1940, was based on a joint application of plaintiff and defendant, and because the court erroneously has now decided that the stipulation upon which the defendant

relies should have been included in the supplemental decree of April 13, when in fact said stipulation was not before the court, because the court thereby has made a new settlement and agreement between the plaintiff and defendant by granting defendant the relief he prays for, and by ignoring the uncontradicted evidence that the relief merely secures to the defendant the fruits of a fraud perpetrated on the plaintiff by him.

On October 15, 1940, the motion of the plaintiff for an order vacating and setting aside the order of the court made August 20, 1940, and granting plaintiff a rehearing thereon being submitted, the court overruled the motion.

To summarize the whole matter, the facts as set out in affidavits of plaintiff, although disputed in part by the defendant, indicate that the defendant has already received in past years rebates on ice cream in the approximate sum of $672.10, and the trial court order of August 20, 1940, gives to the defendant $173.12 in addition, or a total of $845.22 which the defendant will receive, while the plaintiff will receive but $173.12.

The plaintiff, as grounds for reversal, charges that (1) the court erred in granting defendant the relief prayed, because same was opposed by the uncontradicted evidence; (2) the court erred in permitting new issues to be raised by motion and tried by affidavit, over plaintiff's objections, after a consent decree had been entered and same had been fully performed and the judgment thereof satisfied; (3) the court erred in changing a consent decree over the objections of plaintiff.

This subject is discussed generally in several paragraphs in 14 Standard Ency. of Procedure. A paragraph on page 913 reads as follows: "A judgment by consent constitutes the agreement of the parties, made a matter of record by the court at their request. Although purporting to be, it is not, strictly speaking, the act of a court, but rather the act of the parties to the suit. This feature imposes some restrictions upon the right to amend, and upon the right to appeal from such a judgment. It is not a judgment

upon the merits. Such a judgment is not identical with a judgment by confession, but the effect of both is very much the same."

A paragraph on page 919 reads: "When a decree or judgment is made by consent of the parties, the court does not inquire into the merits or the equities of the case. The only questions to be determined by it are whether the parties are capable of binding themselves by consent, and whether they have actually done so. These two facts appearing, the court orders the judgment or decree to be entered."

A paragraph on page 922 says: "A court has power to open or vacate a consent judgment where adequate grounds exist therefor. But in the absence of such grounds, such a judgment can only be modified, changed, or set aside by the consent of all the parties thereto."

Many courts have had questions involving the force of a consent decree before them. We will cite only a very few of a very large number.

"A decree by consent cannot be appealed from, error cannot be assigned on it, a rehearing cannot be granted and it cannot be set aside by a bill of review. *Armstrong v. Cooper,* 11 Ill. 540; *Galway v. Galway,* 231 Ill. 217, 83 N. E. 154; *Mooney v. Valentynovicz,* 262 Ill. 355, 104 N. E. 645." *McDonald v. Shimeall,* 282 Ill. 42, 118 N. E. 399. See, also, *Clark v. Charles,* 55 Neb. 202, 75 N. W. 563.

A "consent judgment" is treated as an agreement of the parties, and given greater force than an ordinary judgment, and the court is without power to open or modify, except upon certain grounds. *Keach v. Keach,* 217 Ky. 723, 290 S. W. 708.

"If parties have the authority, a consent judgment cannot be changed, altered, or set aside without the consent of the parties to it. The judgment, being by consent, is to be construed as any other contract of the parties. It constitutes the agreement made between the parties and a matter of record by the court, at their request. The judgment, being a contract, can only be set aside on the ground of

fraud or mutual mistake." *First Nat. Bank v. Mitchell,* 191 N. Car. 190, 131 S. E. 656. See, also, *Weaver v. Hampton,* 201 N. Car. 798, 161 S. E. 480; *Horning v. Saginaw Circuit Judge,* 161 Mich. 413, 126 N. W. 650.

"Decrees are frequently entered on consent of the parties; and where this practice has been followed, the fact should be recited in the decree. Having been entered, such a decree is binding on the consenting parties; it cannot be reviewed except on a showing that consent was obtained by fraud or that the decree was based on mutual error. A consent decree is as much a final decree and as conclusive upon the parties as is a decree which has been rendered after a hearing on the merits." 19 Am. Jur. 280, sec. 407.

"The judgment in this case was the final ascertainment of the right by consent of the parties to the suit, and cannot be changed by any subsequent order of the court without like consent. *Seiler v. Union Mfg. Co.,* 50 W. Va. 208, 40 S. E. 547." *United States Construction Co. v. Armour Packing Co.,* 35 Okla. 177, 128 Pac. 731.

"The bill shows that after the parol agreement was made, the parties, in pursuance of it, appeared in court, and had a judgment rendered in the cause for the plaintiff. The rendition of that judgment put an end to the previous parol agreement on the subject. For the terms of that judgment, we must look to the records alone of the court that rendered it. The plaintiff is estopped from saying that the judgment does not accord with the previous parol contract." *State Bank of Indiana v. Young,* 2 Ind. 171, 52 Am. Dec. 501.

A consent decree is not, in a strict sense, a judicial sentence. It is in the nature of a solemn contract, and is so binding as to be absolutely conclusive upon the consenting parties, and it can neither be amended nor in any way varied without a like consent, nor can it be reheard, appealed from, or reviewed upon a writ of error. *Schmidt v. Oregon Gold Mining Co.,* 28 Or. 9, 26, 40 Pac. 406, 1014, 52 Am. St. Rep. 759.

"A judgment by consent is regarded as in the nature

of a contract or binding obligation between the parties thereto, * * * and * * * is a waiver of errors and irregularities; and when such consent judgment embraces matters or extends to relief not involved within nor responsive to the issues in the case, it, with respect to such matters and relief, no doubt partakes more of the character of a voluntary agreement between the parties than of a judgment of the court determining a controversy between real litigants." Freeman, Judgments (3d ed.) 372, sec. 330.

"Courts have the general power of entering judgment by consent of the parties for the purpose of executing a compromise and settlement of an action. When made by consent, it is presumed that the judgment is made in view of the existing facts, and that these facts are within the knowledge of the parties. Although judgments by consent are in effect contracts of parties, acknowledged in court and ordered to be recorded, such judgments have been regarded as adverse judgments. It is clear that a judgment by consent is different and distinct from a judgment by confession." 31 Am. Jur. 105, sec. 458.

"The fact that a judgment is rendered by consent gives it neither less nor greater force or effect than it would have had it been rendered after protracted litigation, except to the extent that the consent excuses error and operates to end all controversy between the parties. In this connection, it has been declared that a judgment by consent estops the parties from denying the facts it purports to establish. On the ground that where a judgment is rendered pursuant to a previous parol agreement the rendition of the judgment puts an end to the agreement, it has also been held that the party in whose favor the judgment is rendered is estopped from saying that it does not accord with the previous contract." 31 Am. Jur. 107, sec. 463.

In the case at bar, the district court had finally completed the trial of a bitterly contested case, and on April 10, 1940, entered all of its findings, on all points involved, in a decree of ten pages in length, as it appears in the transcript, and concluding portion providing that the receiver should sell all of the property.

Three days later the parties, having mutually agreed upon a full and complete settlement upon all matters between them, filed an application to modify the decree of the court, setting out that the plaintiff has paid to the defendant the full consideration, and that the defendant has transferred all of the property to plaintiff, and that all the creditors have been paid, and the plaintiff has released his judgment of record, and this application ended with a prayer that, these things having all been done by the parties, the court enter a supplemental decree, directing receiver to deliver to plaintiff all the assets in his hands, and thereupon on the same day the court entered a short supplemental decree in strict accordance therewith, carrying out the exact settlement as made by the parties, vacating the provision in the former decree providing for sale of the property, and directing receiver to transfer all of the property to the plaintiff. This decree, entered by written consent and upon application of the parties, constituted but the formal approval of the court of the exact terms they had agreed upon, and which had been carried out, and this was not only final between the parties, but was binding upon the trial court.

In the opinion of this court, if either party wished to modify this consent decree, it could not be done by the court on motion of one party and over the vigorous objections of the other, and the action of the court so taken on August 20, 1940, was beyond the power of the court, and is hereby set aside and held for naught.

REVERSED.

SIMMONS, C. J., and YEAGER, J., concur in the result.