## FLEMING v. HUEBSCH LAUNDRY CORPORATION.

### No. 9186.

Circuit Court of Appeals, Seventh Circuit.

Feb. 3, 1947.

John J. Burke and Leo J. Landry, both of Milwaukee, Wis., for appellant.

David London and Albert M. Dreyer, OPA, both of Washington, D. C., George Leonard, and Jacob Cohen, OPA, both of Chicago, Ill., and George Monchard, OPA, William E. Remy, Deputy Admr. for Enforcement, and Jacob W. Rosenthal, OPA, all of Washington, D. C. (Isadore L. Kovitz, Regional Atty., of Chicago, Ill., of counsel), for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Refusal to vacate a consent judgment, entered in an OPA treble damage suit, is the basis of the grievance which defendant brings to us for review.

A short statement of the specific facts follows: Defendant is in the family laundry business in and about Milwaukee. It employs a number of driver salesmen, whose duties are to pick up bundles as directed by its customers, and take them to the laundry where the services are performed. When the laundry service is completed, the driver delivers the packages to the customers, and collects the charges made. He is paid a commission. Another method of doing business —which method is the particular subject-matter of this suit—is the maintenance by defendant of a number of agents or laundry substations, in various communities located near, or in, the City of Milwaukee. Individuals bring their laundry to the agents where it is picked up by defendant's employee; defendant performs its laundry service, and the bundles are then returned to the agent, with a statement listing the

charges of each customer's bundle. The agent is billed for the total amount, less commission, which is agreed upon by the defendant and the agent and varies with the volume of laundry which the agent solicits.

A reduction of this commission to the agents, below what it had been in March, 1942—*without a change in the price to the customer* was the alleged violation of the Act upon which this suit was based.

The OPA Administrator brought suit against defendant, April 4, 1946, charging a violation of Sec. 4 (a) of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 904(a), in that it allegedly violated Revised Maximum Price Regulation No. 165, which concerns the sale of services. Section 2 of the Regulation prohibits the sale of a service covered by the Regulation at a price higher than the maximum price established in the Regulation. It was charged that defendant violated this Regulation from March 22, 1945 to March 21, 1946. Allegedly a "spot check" revealed that the reduction in the agents' commissions brought the defendant the sum of $4,995.64, and the Government demanded treble damages, amounting to $14,986.92. The Government also sought an injunction.

A stipulation was entered into on the same day between the OPA and the defendant which stated that the violations alleged in the complaint resulted in overcharges in the amount of $4,995.64, and the claim for treble damages of $14,986.92 is settled, subject to the approval of the court, for $7,493.46. There was also consent to the entry of a final judgment against the defendant for the latter sum and for the entry of an injunction.

The District Court entered its judgment the same day, in accordance with, and on, this stipulation. One installment of the judgment, to-wit $2,497.82, has been paid.

On May 17, 1946, and at the same term of court at which the judgment was entered, a petition was filed in the District Court asking that the judgment be vacated on the ground that defendant was unfamiliar with the Regulations involved and did not know plaintiff had no valid cause of action against it. The trial court denied this petition, June 1, 1946, and this appeal is taken from the original judgment and the denial of defendant's motion to vacate.

The questions are: (1) May a consent decree ever be vacated? (2) Did the trial judge abuse his discretion in denying the motion to vacate this consent judgment?

The petition to vacate alleged that defendant's president, in January, 1943, called at the Milwaukee District Office of the OPA and was advised by a price specialist in that office that the defendant could lower the commissions paid to the agents without violating any provisions of the Act, or any of the Regulations issued thereunder, so long as it did not raise the price of the services to its customers. Acting upon such advice the defendant reduced the commissions which were allowed its agents. It did not in any manner increase the prices charged its customers. It never charged a price in excess of the price it had charged during the critical month of March, 1942. Later, in March, 1946, however, it was advised by the OPA that it was violating the Regulations because it was receiving more money for its services than it did in March, 1942. In other words, it paid the agent less, therefore it received more than before, the charge to the customer remaining the same.

After making the first payment on the judgment, defendant consulted other counsel as to the possibility of having the reduction of commission to its agents formally approved by the OPA. The new counsel advised the defendant that such reduction, if made, would not, and did not, violate the Act, nor any Regulation thereunder. Thereafter, defendant conferred with the Milwaukee Office of Price Administration and was granted authority to decrease the commissions formerly paid to its agents. "The amount of the decrease permitted was the same amount which the Office of Price Administration formerly claimed as an overcharge."

■ On the question of the violation of the Act or Regulation No. 165, we are of the opinion that the defendant was without guilt. It never violated the Act or the Regulation. It never charged more than the ceiling price at any time. It never raised its price to the customer. It effected a re-

duction in the cost of doing its business by reducing the commission paid to the agent without passing on that reduction to the customer. We think it was not required to do so. If required to pass on that saving in the operation of its business, could it have added to its price the increased cost of labor? Clearly not. It was the ceiling price which marked the line that determined legal from illegal charges. It had to so conduct its business as to keep within the ceiling price. This it did. The price to the customer remained the same. At all times it was within the ceiling price fixed by OPA.

◼ This brings us to the second and perhaps the closer question. May defendant be relieved of a judgment entered upon its consent with all facts available to it? We think it should be given relief.

True, defendant, with the services of counsel, knew or had available, all the facts. So circumstanced, it consented to the entry of a money judgment and to an injunction against it. The burden rests quite heavily on it to escape the consequences of its own action evidenced by its written consent. An exhaustive collection of cases on courts' "Power to open or modify 'consent' judgments," appears in McArthur v. Thompson, 140 Neb. 408, 299 N.W. 519, 139 A.L.R. 421.

Defendant presented facts and reasons which make a strong appeal.

First, it is required to pay damages for a violation of a War Act when it never violated the Act. The judgment calls for the payment of damages (or penalty) when it committed no damages. The money ordered to be paid was not due the United States or the OPA. The OPA is collecting money not due it from one who owes it nothing. Under these circumstances, plaintiff's plea for a pound of flesh because "it is written in the bond" is not too moving in its appeal.

We are dealing with a citizen and his government. The latter should not demand money unless the citizen owes it. Moreover, if it erred in its demand, it should be eager to undo the mistake. Good and loyal citizenry is not bred or developed by such conduct.

Second, we are not indulging in imaginatory facts when we say defendant was justified in assuming it was liable and in consenting to the entry of a judgment against it. It was told so by the OPA representatives. The Government official relied not merely on the Act passed by Congress but upon a Regulation of the OPA *plus an interpretation of the Regulation by said OPA.*

As to the soundness as well as the existence of said interpretation, defendant (and apparently its then counsel) were excusably ignorant. Defendant assumed it was being correctly advised by informed Government officials. The presumptions were all in favor of said rulings and the advice thus given.

Defendant's ignorance of the law and the facts was excusable.

The evidence, to-wit, the existence and construction of the Regulation, was unknown and unavailable to defendant.

We have experienced difficulty in ascertaining the existence of OPA constructions of its Regulations. Without this information offered by the OPA representatives, how would citizen or counsel (or court) know where to find the construction in question? We are told it appears in 4 OPA Desk Book, page 50,406. 50,406 pages, all in very fine print, containing about 1450 words per page, require a lot of reading for one charged with other arduous duties, such as the prompt return of shirts and kerchiefs, sox, etc.

And the problem grows no less burdensome when at last we find the appropriate caption to the said construction of Maximum Price Regulation 165 which reads, "Services covered". Sec. 2 provides, "You may not sell any service covered by this regulation at a price higher than your maximum price." The "Interpretation" provides " 'You' refers to any seller subject to this regulation. If you supply service through more than one place of business each such place of business shall for the purpose of this regulation be considered a separate seller."

The following regulation also appears, "This Regulation covers all services previously covered by Maximum Price Regulation No. 165 as amended, Services, *except as indicated below.*" We ask, how often, was Price Regulation 165 amended? Where

can the amendments be found? Were any amendments made by way of interpretations? And what do the exceptions "except as indicated below" refer to? We have found one "exception as indicated below." It reads: "Sec. 2. Prohibitions. On and after August 1, 1944, regardless of any contract or other obligations: (a) You may not sell any service at a price higher than your maximum price." What do the last two lines indicate to the average citizen who was considering the reduction of commission paid to his agent?

We are informed the interpretation is to be found in 4 OPA Desk Book, page 50,-406. What does the average citizen of Milwaukee (or elsewhere) know about a Desk Book? There is none in the Public Library, so we think. We have failed to find one in our library. Where would the citizen find it? Nor does it appear in the statutes. In size it is larger than the Federal Statutes. It exceeds 50,406 pages. How much more, we are not advised. All this is related to show defendant was hardly to blame for accepting the law as given to him by the Government officials, of an interpretation of a Regulation upon which the Government is relying in bringing this suit.

█ It might be said that his doubts should have been aroused because the construction as given him, conflicted with good, common, or horse, sense. But as a law-abiding citizen, at a time when we were at war, defendant desired to obey the letter and the spirit of the Regulation and its construction; even though hard to understand. His action is not held against him as in other cases where consent to the entry of a judgment is being considered. And moreover, defendant was subject to a treble damage penalty. If it used its better judgment and stood trial and then found itself in error it was liable for treble damages, or for a judgment in excess of $15,000.

These are the facts and reasons which furnish the basis of defendant's argument in favor of a vacation of the consent judgment here sought.

We think its request for the relief sought should be granted, unless prevented from so doing because the court was without authority to vacate a judgment based on its freely given consent.

Rule 60 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, entitled "Relief from Judgment or Order" reads

"(b) Mistake; Inadvertence; Surprise; Excusable Neglect. On motion, the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. * *"

█ We think the present case falls under the subdivision of excusable neglect. We think this provision covers all judgments, including consent or default judgments, or judgments entered after contest. The required showing of excusable neglect should perhaps be more exacting in the case of a consent judgment, but we see no reason why the rule should not be applied to all judgments. The language of the rule does not restrict it, and reason, which is apparent in this case, suggests the wisdom of the inclusive construction of the rule. See 18 Hughes Federal Practice, Jurisdiction and Procedure, p. 446; Walden v. Skinner, 101 U.S. 577, 584, 11 Otto 577, 584, 25 L. Ed. 963; Roehl v. Texas Co., 107 Cal.App. 708, 291 P. 262; Suggs v. Mutual Benefit Health & Accident Ass'n., 10 Cir., 115 F.2d 80; Zimmern v. United States, 298 U. S. 167, 56 S.Ct. 706, 80 L. Ed. 1118; Palace Hardware Co. v. Smith, 134 Cal. 381, 66 P. 474; State of Wisconsin v. Michigan, 295 U. S. 455, 55 S.Ct. 786, 79 L.Ed. 1541; Terry v. Commercial Bank of Ala., 92 U. S. 454, 2 Otto 454, 23 L.Ed. 620; Doss v. Tyack, 14 How. 297, 14 L.Ed. 428.

█ In United States v. Swift & Co., 286 U. S. 106, 52 S.Ct. 460, 462, 76 L.Ed. 999, the Court said, "We reject the argument * * * that a decree entered upon consent is to be treated as a contract and not as a judicial act."

Upon all the facts disclosed, we are convinced that the judgment should be vacated

and defendant given an opportunity to file its answer.

The judgments are reversed with directions to proceed in accordance with the views here expressed.