3. Plaintiff is not entitled to recover in this action and judgment should be for the defendant.

**PORTER v. FLEISHMAN et al.**
**Civ. No. 3284.**

District Court, D. Oregon.
March 12, 1947.

Roy C. Fox, of Seattle, Wash., and Sylvanus Smith and Henry L. Hess, U. S. Atty., both of Portland, Or., for plaintiff.

James Arthur Powers, of Portland, Or., for defendants.

McCOLLOCH, District Judge.

"In the United States, once Congress delegates authority to an administrative agency, the Congress loses effective control of the use to which that authority will be put, because it places the power in the hands of an independent and sometimes antagonistic Executive department of government. Hence, Congress legislates with wearisome and confusing details, designed to foreclose abuse, on the theory that every administrator will push his authority to the uttermost limits and as far beyond as the Courts will permit—an expectation seldom disappointed." [1] Mr. Justice Jackson, Jan. 1947 A.B.A.Journal, Vol. 33, p. 25.

I am recording the facts in this case, so that the Bar may see how the administrative mind operates when working behind a barrier like the infamous provision of Section 204(d) [2] of the Price Control Act, 50 U.S.C.A.Appendix, § 924(d).

Albert H. Fleishman started a small lumber remanufacturing business under the name of Southwest Oregon Lumber Company. One of his sons went into the wholesale lumber business under the name of J. N. Fleishman Lumber Company. This is an OPA penalty suit against the father, to recover three times the gross amount paid him by his son for milling 49 cars of lumber. Injunction is also asked.

It is not claimed that the father's milling charges exceeded the ceiling allowed for that service. The claim is that the father could not do milling for his son on any terms, because, 1, the father was presumed, on account of the blood relationship, to be financially interested with his son; [3] 2, he was expressly forbidden to do business with his son by special clause written into his license to operate a "custom mill." See Appendix "A", particularly * sentence at end.

 Of course, such a presumption could not be made conclusive, even by Congress, although conclusive effect was claimed for it at the trial.

 It is equally plain that the Regional Administrator could not find the fact of financial connection against the father with-

---

[1] Quoted from an address by Supreme Court Justice Robert H. Jackson, before the American Bar Association.

[2] "Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any * * * regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

[3] "The term 'financial interest' as used in sections 3 and 4 of this regulation means any ownership or control of the plant which performed milling or kiln drying services by a sawmill, concentration yard, planing mill, wholesaler or commission merchant, or ownership or control of the sawmill, concentration yard, planing mill, wholesaler or commission merchant by a plant which performs milling or kiln drying services or any common ownership, or control of such plant with one of the other types of operations listed, or any financial interest, direct or indirect, no matter how small, which such plant may have in one of the other types of operations listed, or which such other type of operation may have in the plant performing the services. Financial interest or control within the meaning of this section and of sections 3 and 4 shall be presumed where there is any continuing arrangement between the plant performing the milling or kiln drying services and one of the other listed types of operations for the former to rework lumber produced, handled or sold by the latter. *Financial interest within the meaning of these sections shall also be presumed where a family relationship, by blood or marriage exists between the persons owning or operating the plant which performs milling or kiln drying services and one of the other listed types of operations.*" (Italics added.) M.P.R. 539, Sec. 4a.

out a hearing, although this he seems to have attempted to do.

▮ It was shown at the trial that there was no financial connection between the two firms. No evidence was offered to the contrary.

▮ Certainly, presumptions declared by administrative agencies are not binding on the courts. They are no more binding than regulations fixing penalties. Porter v. Wright, D.C., 69 F.Supp. 46, 48, n. 3. No more binding than a regulation (11 F.R. p. 14103) purporting to declare the time within which prosecutions may be conducted after the expiration date of a regulation. Kirsch v. Quality Fruit Wines Corporation, —— Misc. ——, 68 N.Y.S.2d 120, per Justice Edgar J. Nathan, Jr.

I doubt if the average lawyer knows that the administratrists have been attempting to legislate in these respects. During the war and post-war years the profession has been the busiest in its history, and this explains, I think, why it has not stood better guard. As for the courts, they are beginning to emerge from the bomb cellars. Fleming v. Huebsch Laundry Corporation, 7 Cir., 159 F.2d 581.[4]

Judgment is for the defendants.

Appendix "A"
Office of Price Administration
San Francisco Regional Office
Region VIII
District Price Attorney
Portland
Nov. 2, 1945

Southwest Oregon Lumber Company
Grants Pass, Oregon.

Gentlemen: Re: Application for authorization to operate as a custom mill. File No.: VIII–539–4(b)–95 (Granted)

This is in reference to your application filed on or about September 11, 1945, pursuant to Section 4(b) of Maximum Price Regulation No. 539 wherein you request authority to operate as a custom mill under the regulation at your mill located at Grants Pass, Oregon.[*]

The Regional Administrator is authorized to grant such an application where he can make findings that the authorization (1) Will result in a greater production of surfaced boards or dimension or kiln dried lumber; (2) Will not encourage producing sawmills having remanufacturing and kiln drying facilities to ship their lumber green, partially dry, rough, or in thicknesses over 2"; (3) Will provide necessary milling services which cannot reasonably be supplied by producing mills or by custom mills qualifying under Section 4(a) of the regulation; (4) Will not result in unnecessarily increasing the cost of finished lumber to the ultimate consumer.

Careful study indicates that your application should be granted with certain limitations. These limitations are necessary in order that the above findings may be made.

After due consideration of the foregoing and pursuant to authority vested in the Regional Administrator of the Office of Price Administration by Section 4(b) of Maximum Price Regulation No. 539, it is hereby ordered that you may operate under said regulation and determine your maximum prices in accordance with Section 12 thereof, subject to the following limitations: (a) This authorization shall not cover any lumber sold by you or by any person or company in which you have any interest or which has any interest in your company; (b) This authorization shall not cover any lumber which originates at a mill which has facilities for performing the particular custom milling services; (c) This authorization shall terminate immediately if and when you ship any lumber to be custom milled by any person or company, or reduce your production of lumber in order to

---

[4] Government by regulation is secret government. For that reason it can never take a place alongside government by parliamentary and judicial process, conducted in the open.

No one will ever know, no one can ever know, the true authorship of countless regulations and orders promulgated in recent years, many obviously conceived in hostility to settled constitutional principle.

[*] You will not be permitted to charge custom milling on any lumber sold by J. N. Fleishman Lumber Company or his wholesale lumber company, or any wholesale lumber company in which he may have a financial interest.

do custom milling. The term "custom milling", as used herein includes kiln drying.

This order may be revoked, amended, or corrected at any time.

This order shall become effective immediately.

> Very truly yours,
> Ben C. Duniway
> Regional Administrator